JOURNAL ENTRY AND OPINION
{¶ 1} Charles Davis appeals from a judgment of conviction, entered by Judge Kathleen A. Sutula, after a jury found him guilty of burglary.[1] He claims it was error to allow evidence of two out-of-court identifications, that the evidence was inadequate to support the verdict, and that the judgment entry improperly stated a sentence more severe than that imposed at the sentencing hearing. We affirm.
 {¶ 2} On October 22, 2002, then thirty-eight-year-old Davis was arrested following a reported break-in at a home on Henley Road in East Cleveland The victim, Fred Wiggins, called police after he arrived home about 10:00 p.m. and found a man inside who he described as African-American, between five feet nine inches and five feet eleven inches tall, and wearing a dark jacket with a white stripe down the back or sleeve. He stated that, while putting groceries away in his kitchen, he saw the man walk through the dining room and into the study where, apparently, he left through a window. He claimed he saw the man's profile for a few seconds and, when the man then turned and briefly looked at him, he had a more direct view of the intruder's face. He contended that the man passed within about eight feet of him and, although the dining room and study were darkened, the kitchen light and street light coming in through the window sufficiently illuminated the man's face so that he could see.
 {¶ 3} As the East Cleveland police were taking Wiggins' statement and his description of the intruder, Patrolman John Bechtel saw a man, later identified as Davis, walking in the neighborhood near Wiggins' house. The man ran when he saw the patrol car, and Bechtel apprehended him after a foot chase. Davis was taken to Wiggins' house, where Wiggins identified him as the intruder.
 {¶ 4} Davis was arrested and a search at the station revealed two watches and a woman's gold bracelet in his possession. Wiggins was told about the items and he described the bracelet to police.[2] When the items were shown to him, he identified the bracelet as his, but could not positively identify the watch.[3] He stated that he owned several watches and that the one shown to him was similar to those in his collection, but he could not state with certainty that the watch was his.
 {¶ 5} A few days after the break-in, Wiggins viewed a photo array and again positively identified Davis as the intruder. Davis was indicted for one count of burglary with a notice of prior conviction.[4] Davis moved to suppress the identification made on the night of the offense, the subsequent identification made from the photo array, and also moved to prohibit any in-court identification by Wiggins. The judge denied the motion, trial was held, and Davis was found guilty of burglary.[5] He was sentenced to three years in prison, and advised of three years post-release control. He asserts five assignments of error, which are included in an appendix to this opinion.
 MOTION TO SUPPRESS. {¶ 6} Davis claims that Wiggins' out-of-court identifications should have been suppressed because they were unnecessarily suggestive. When reviewing a ruling on a motion to suppress, we give deference to the judge's factual findings, but we review the application of law to fact de novo.[6] We review the procedure used to identify a suspect to determine whether, under the totality of circumstances, it was unnecessarily suggestive and unreliable.[7] Even if the procedure is suggestive, the identification will be admitted if other factors show its reliability, because the focus of the inquiry is on whether the identification itself is reliable.[8] The totality of circumstances test includes, among other things, the witness's opportunity to view the suspect, the degree of attention paid, the accuracy of the witness's description prior to the identification, and the length of time between the offense and the identification.[9]
 {¶ 7} Davis first claims that the identification outside Wiggins' house was unreliable because Wiggins saw him in handcuffs, outside the police car. Although the presentation of a single suspect for identification is ordinarily discouraged,[10] an exception is recognized when the suspect is apprehended at or near the scene of the crime and is presented to the victim or witness shortly thereafter.[11]
 {¶ 8} Wiggins testified that Davis was brought to his house for identification approximately twenty or twenty-five minutes after he first called police. Although Davis argues that Wiggins did not have enough time or light to see the intruder clearly, Wiggins stated that the lighting was sufficient for him to make out the intruder's features both from a profile and more direct angle. Moreover, he described the intruder's jacket for the police and Davis was wearing a jacket matching that description. The accurate description of the intruder's clothing contributed to the circumstances enhancing the reliability of the identification. Therefore, despite statements that "show-up" procedures are "widely condemned,"[12] the constitutional standard for admitting identification evidence is not violated by the procedure used outside Wiggins' house.[13]
 {¶ 9} Davis also claims that the photo array shown to Wiggins a few days after the break-in was unfairly suggestive because his photograph shows that he was wearing an orange jumpsuit typically issued as jail clothing, and that photo was the only one in which the person depicted is similarly clothed. Although another man's photo showed a barely visible portion of an orange collar, Davis's photo portrays part of his chest, neck, and shoulder, revealing significantly more orange than the other.
 {¶ 10} The judge noted the difference between the orange jumpsuit and the clothing shown in the other photos, and also noted that Davis's photograph had a green background, while all the others had blue backgrounds. Nevertheless, she stated that she could not assume that Wiggins would associate the orange clothing with jail attire and, therefore, she found his identification of Davis's photo admissible.
 {¶ 11} Even if Wiggins did not associate the orange jumpsuit with jail attire, Davis's clothing makes his photo stand out among the other five, as does its green background. Whether intentional or accidental, these differences are unsettling, because they could draw a viewer's attention to Davis's photo. However, even though we are uncomfortable with the procedures used in the photo array, we find the admission of this evidence harmless beyond a reasonable doubt.[14]
 {¶ 12} A subsequent identification does not taint the validity of a prior identification.[15] Therefore, even if we found the photo array identification inadmissible, we are confident that the jury would have returned a guilty verdict. Wiggins identified Davis as the intruder on the night of the offense, and the reliability of the identification was enhanced because he had accurately described the jacket Davis was found wearing. Additionally, Davis was discovered in possession of a bracelet that Wiggins positively identified as belonging to him. Because of this evidence, we find that admission of the photo array evidence, if erroneous, was harmless. The first assignment is overruled.
 {¶ 13} Davis next challenges both the sufficiency and manifest weight of the evidence, but both challenges rely heavily on the claimed inadmissibility of the identification evidence. A sufficiency claim raises a question of law that we review de novo[16] to determine "whether, after reviewing the evidence in the light most favorable to the prosecution, any
rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[17] In contrast, the purpose of manifest weight review is to determine "whether the evidence produced attains the high degree of probative force and certainty required of a criminal conviction."[18] Instead of looking for merely sufficient evidence, manifest weight review tests whether the verdict is supported by substantial evidence.[19] Although the scope of review broadens, the standard of review is more deferential. Under the manifest weight test, a new trial should not be ordered unless the evidence weighs so heavily against conviction that the verdict appears unjust.[20]
 {¶ 14} As noted above, on the night of the offense, Wiggins described the intruder's clothing to police, identified Davis, who was wearing a matching jacket, as the intruder, and Davis had a bracelet that Wiggins positively identified as belonging to him. This evidence was sufficient to sustain the conviction because, if believed, it leads to a rational inference that Davis entered Wiggins' house and committed a theft.
 {¶ 15} Davis also claims the evidence was insufficient to support a charge of burglary under R.C. 2911.12(A)(1), because that charge requires, among other things, that the offender trespass in an occupied structure "when another person other than an accomplice of the offender is present * * *." Davis claims that even if he committed a burglary offense, the evidence shows that he entered the house before Wiggins came home, and no one was present.
 {¶ 16} This argument fails, however, because the "trespass" element of burglary can constitute more than the initial entry and the trespass continues throughout the duration of the offense.[21] Therefore, when Wiggins arrived home, Davis's trespass took on the character of remaining on the premises, which took place while Wiggins was present, satisfying R.C.2911.12(A)(1).
 {¶ 17} Davis's manifest weight claim relies on the same arguments raised in the sufficiency challenge. However, these arguments do not cast doubt on Wiggins' testimony or otherwise impugn the credibility of the evidence. In addition to its sufficiency, the evidence of guilt is substantial because Wiggins' testimony is supported by the circumstances, and Davis presented no credible defense. Although he presented evidence that was apparently intended to show that he was walking in the neighborhood because of car trouble, the jury could have disbelieved such a claim because he ran from police instead of seeking help. He refused to identify himself after arrest, and he then gave a false name and social security number. Therefore, he has failed to show that the verdict was against the manifest weight of the evidence. The second and third assignments are overruled.
 {¶ 18} Davis asserts he received ineffective assistance of counsel because his lawyers failed to obtain transcripts of his preliminary hearing. He claims the testimony at that hearing would have revealed inconsistencies in witnesses' testimony, and those inconsistencies would have cast doubt on the reliability of Wiggins' identification on the night of the offense. A claim of ineffective assistance of counsel requires a finding that the lawyer's conduct fell below professional standards and prejudiced the defendant.[22]
 {¶ 19} We cannot assess this claim, however, because the preliminary hearing transcript is not part of the record. Therefore, we cannot assess whether his lawyers fell below professional standards when they failed to obtain the transcript, nor can we determine whether Davis was prejudiced by such failure. Because the claim relies on evidence outside the record, this claim is not reviewable here and should be raised in a postconviction proceeding.[23] The fifth assignment is overruled.
 {¶ 20} Finally, Davis contends that the judgment entry should be modified to show that post-release control is not a part of his sentence because the judge failed to advise him of post-release control at the sentencing hearing and, therefore, could not impose it through the judgment entry.
 {¶ 21} Davis's conviction of a second degree felony subjects him to a mandatory three-year period of post-release control.[24] Such post-release control, however, must be properly stated, and a judge has no authority to impose a sentence in a journal entry that was not imposed in the defendant's presence at the sentencing hearing.[25]
Post-release control is part of an offender's criminal sentence and must be imposed at the sentencing hearing as well.[26]
Because the amendments to Ohio's sentencing scheme[27] give the State the right to appeal sentencing orders,[28] a judge's error in imposing sentence, even a mandatory sentence, is waived if the State fails to appeal.[29] Nevertheless, the record here shows that the judge imposed post-release control at the sentencing hearing.
 {¶ 22} At the sentencing hearing, the judge stated "that the three years post-release control applies to this case * * *." Although this statement failed to notify Davis of the salient features of post-release control,[30] the judge did adequately notify him that post-release control was to be part of his sentence.[31] Therefore, the inclusion of post-release control in the judgment entry did not impose a sentence that had not been imposed at the hearing.
 {¶ 23} Although the failure to comply with R.C.2929.19(B)(3)(e) would entitle Davis to a new sentencing hearing, he has not requested resentencing, despite his apparent awareness of the defects in the original hearing. Under these circumstances, we will not remand for a remedy the defendant recognized, but did not request. We note, however, that resentencing on such grounds should not be considered a mere formality by judges or litigants.
 {¶ 24} R.C. 2929.19 mandates certain procedures that are to be used in all sentencing hearings, and such procedures should not be considered expendable. The consideration of factors, statements of findings and reasons on the record, and notifications to defendants are included not as window dressing, but to ensure, on the record, that the judge has recognized and considered relevant factors before imposing sentence.[32]
Therefore, while a failure to notify a defendant of the features of post-release control might appear minor, one should not automatically assume that the judge will impose the same sentence after expressly noting such factors on the record.[33]
Nevertheless, because Davis has not requested resentencing, we will not provide it. The fourth assignment is overruled.
 {¶ 25} The judgment is affirmed.
Judgment affirmed.
Cooney and Calabrese Jr., JJ., concur.
 APPENDIX — ASSIGNMENTS OF ERROR "I. The trial court erred by denying his motion to suppresswhere the identification procedures violated his right to dueprocess."
 "II. The trial court erred when it denied Mr. Davis' motionfor acquittal under Crim.R. 29 because the state failed topresent sufficient evidence to establish beyond a reasonabledoubt the elements necessary to support a conviction for burglaryunder R.C. 2911.12(A)(1) as charged in the indictment."
 "III. The convictions were against the manifest weight of theevidence."
 "IV. The term of post release control included in thesentencing journal entry is not properly part of defendant'ssentence and should be vacated because the court failed to adviseappellant of post-release control at the sentencing hearing asrequired by law and in violation of his due process rights."
 "V. Appellant was denied his right to effective assistance ofcounsel."
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] R.C. 2911.12(A)(1), a second degree felony.
[2] He also described a watch that he believed was missing, but later found.
[3] It appears that, based on Wiggins' description of the watch he believed was missing, the police showed him only one of the watches.
[4] In violation of R.C. 2923.13(F)(6).
[5] Davis stipulated to the notice of prior conviction and a drug case, CR-416077 was dismissed.
[6] Cleveland v. Morales, Cuyahoga App. No. 81083, 2002-Ohio-5862, at ¶ 10-12; State v. Brown (Jan. 25, 1999), Scioto App. No. 98CA2575.
[7] State v. Gross, 97 Ohio St.3d 121, 2002-Ohio-5524,776 N.E.2d 1061, at ¶ 19.
[8] State v. Jells (1990), 53 Ohio St.3d 22, 27,559 N.E.2d 464.
[9] Gross, supra.
[10] Id., at ¶ 24.
[11] State v. Madison (1980), 64 Ohio St.2d 322, 332, 18 O.O.3d 491, 415 N.E.2d 272; State v. Williams (Oct. 4, 2001), Cuyahoga App. No. 78961.
[12] Gross, supra.
[13] We note, however, that admission of the evidence does not prevent the defendant from challenging its credibility before the jury. See, e.g., Crane v. Kentucky (1986), 476 U.S. 683,688-89, 106 S.Ct. 2142, 90 L.Ed.2d 636 (after denial of suppression motion, defendant can challenge credibility of confession before jury).
[14] State v. Griffin (2001), 142 Ohio App.3d 65, 79,753 N.E.2d 967.
[15] State v. Parker (1990), 53 Ohio St.3d 82,558 N.E.2d 1164, paragraph two of the syllabus.
[16] State v. Thompkins, 78 Ohio St.3d 380, 386,1997-Ohio-52, 678 N.E.2d 541.
[17] (Emphasis sic.) State v. Stallings, 89 Ohio St.3d 280,289, 2000-Ohio-164, 731 N.E.2d 159, quoting Jackson v. Virginia
(1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560.
[18] State v. Getsy, 84 Ohio St.3d 180, 193, 1998-Ohio-533,702 N.E.2d 866.
[19] Id.
[20] State v. Lindsey, 87 Ohio St.3d 479, 483, 2000-Ohio-465,721 N.E.2d 995.
[21] State v. Fontes, 87 Ohio St.3d 527, 530, 2000-Ohio-472,721 N.E.2d 1037; State v. Powell (1991), 59 Ohio St.3d 62, 63,571 N.E.2d 125.
[22] Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693; State v. Johnson,88 Ohio St.3d 95, 108, 2000-Ohio-276, 723 N.E.2d 1054.
[23] State v. Cooperrider (1983), 4 Ohio St.3d 226, 228, 4 OBR 580, 448 N.E.2d 452.
[24] R.C. 2967.28(B)(2).
[25] Crim.R. 43(A); State v. Nero (1998),125 Ohio App.3d 529, 531-532, 708 N.E.2d 1080.
[26] Woods v. Telb, 89 Ohio St.3d 504, 2000-Ohio-171,733 N.E.2d 1103, paragraph two of the syllabus.
[27] Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136, 7562-7563.
[28] R.C. 2953.08(B).
[29] State v. Smiley, Cuyahoga App. No. 79514, 2002-Ohio-3544, at ¶ 8; State v. Jones (May 24, 2001), Cuyahoga App. No. 77657 (Kilbane, J., dissenting).
[30] R.C. 2929.19(B)(3)(e).
[31] R.C. 2929.19(B)(3)(c).
[32] Smiley, at ¶ 11.
[33] Id.; State v. Steimle, Cuyahoga App. Nos. 79154 and 79155, 2002-Ohio-2238, at ¶ 17.