DECISION AND JUDGMENT ENTRY
{¶ 1} Robert Fairrow, Jr. appeals the trial court's judgment convicting him of burglary. He contends that the court violated his state and federal constitutional equal protection rights by permitting the state to use a peremptory challenge to exclude an African-American juror. Because the state offered a credible race-neutral reason for exercising a peremptory challenge to the juror, the trial court properly overruled appellant's objection and he suffered no deprivation of his equal protection rights. He further argues that the evidence fails to establish an essential element of the crime of burglary, i.e., that he trespassed in an "occupied structure." Because the structure need not be occupied at the time of the initial trespass, sufficient evidence supports appellant's burglary conviction. Therefore, we affirm the trial court's judgment.
 {¶ 2} The Ross County Grand Jury returned an indictment charging appellant with burglary, in violation of R.C. 2911.12, and possession of criminal tools, in violation of R.C. 2923.24. Appellant pled not guilty and the matter proceeded to trial.
 {¶ 3} During voir dire, the state excused two African-American jurors, Katherine Weaver and Joleen Sanders. Appellant initially objected to the state's removal of both of them, but subsequently withdrew his objection to the state's removal of Juror Weaver.
 {¶ 4} The prosecutor proffered the following reason for excusing Juror Sanders: "[This] peremptory I exercised purely because of the familiar relationship she has with the defendant. Perhaps I shouldn't say familiar. Her mother is good friends with the defendant's mother. She stated she didn't wish to be here. I thought it best that she not sit on this panel because of that reason."
The court found the state's reason to be race-neutral and overruled appellant's objection.
 {¶ 5} At trial, the evidence established that at approximately 5:45 p.m. on July 7, 2001, a Saturday, John Tomlinson and his son discovered that someone had broken into Tomlinson's insurance agency office. Upon arriving at the office, they initially found a broken window and after entering the office, they discovered a man, later identified as appellant, inside.
 {¶ 6} Appellant's primary argument regarding the burglary offense was that he did not trespass in an "occupied structure" because no one was likely to be present on a Saturday at 5:45 p.m.
 {¶ 7} The evidence showed that Tomlinson's normal office hours are 9:00 a.m. to 5:00 p.m., Monday through Friday. Tomlinson routinely worked outside of those hours three times per week, usually from 5:00 p.m. to 7:00 p.m. Occasionally, he worked Saturday mornings. During cross-examination, Tomlinson admitted that it was "[h]ighly unlikely that [he'd] be there usually on a Saturday evening."
 {¶ 8} The jury subsequently found appellant guilty of burglary and possession of criminal tools. The trial court sentenced appellant to concurrent terms of imprisonment of five years for the burglary offense and eleven months for the possession of criminal tools offense.
 {¶ 9} Appellant appealed the trial court's judgment and raises the following assignments of error: "First Assignment of Error: The trial court violated Mr. Fairrow's federal and state constitutional equal protection rights by overruling his objection to the State's use of a peremptory challenge to exclude an African-American prospective juror.
Second Assignment of Error: Mr. Fairrow's burglary conviction violated his state and federal constitutional rights to due process of law, because the evidence adduced at trial was insufficient to establish all requisite elements of that offense."
 I {¶ 10} In his first assignment of error, appellant asserts that the trial court erred by overruling his objection to the state's use of a peremptory challenge to excuse Juror Sanders, an African-American juror. He claims that the state failed to offer a race-neutral reason for excusing Juror Sanders. He disagrees with the state's assertion that the relationship between the families and Sanders' statement that she would rather not serve as a juror constitute race-neutral reasons.
 {¶ 11} The Equal Protection Clause forbids the state from exercising a peremptory challenge to excuse a juror solely because of that juror's race. See Batson v. Kentucky (1986), 476 U.S. 79, 89, 106 S.Ct. 1712,90 L.Ed.2d 69. "The Equal Protection Clause guarantees the defendant that the State will not exclude members of his race from the jury venire on account of race, or on the false assumption that members of his race as a group are not qualified to serve as jurors. Id. at 86 (citations omitted).
 {¶ 12} In Batson, the court reasoned that "[p]urposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." Id. The court explained: "`The very idea of a jury is a body * * * composed of the peers or equals of the person whose rights it is selected or summoned to determine; that is, of his neighbors, fellows, associates, persons having the same legal status in society as that which he holds.'"
Id. (quoting Strauder v. West Virginia (1879), 100 U.S. 303, 308).
 {¶ 13} The Ohio Supreme Court recently re-stated the framework for analyzing a criminal defendant's claim that the state's exercise of a peremptory challenge to excuse an African-American juror violates the Equal Protection Clause: "`A court adjudicates a Batson claim in three steps.' State v. Murphy (2001), 91 Ohio St.3d 516, 528, 747 N.E.2d 765. First, the opponent of the peremptory challenge must make a prima facie case of racial discrimination. Second, if the trial court finds this requirement fulfilled, the proponent of the challenge must provide a racially neutral explanation for the challenge. Batson,476 U.S. at 96-98, 106 S.Ct. 1712, 90 L.Ed.2d 69. However, the `explanation need not rise to the level justifying exercise of a challenge for cause.' Id. at 97, 106 S.Ct. 1712, 90 L.Ed.2d 69. Finally, the trial court must decide based on all the circumstances, whether the opponent has proved purposeful racial discrimination. Id. at 98, 106 S.Ct. 1712, 90 L.Ed.2d 69. See, also, Purkett v. Elem (1995), 514 U.S. 765, 767-768, 115 S.Ct. 1769,131 L.Ed.2d 834." State v. Bryan, 101 Ohio St.3d 272, 2004-Ohio-971,804 N.E.2d 433, at ¶ 106.
 {¶ 14} "A trial court's findings of no discriminatory intent will not be reversed on appeal unless clearly erroneous. State v. Hernandez
(1992), 63 Ohio St.3d 577, 583, 589 N.E.2d 1310, following Hernandez v.New York (1991), 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395." Id. "`"The trial court's finding is entitled to deference, since it turns largely `on evaluation of credibility."'" Bryan at ¶ 110 (quoting Statev. White (1999), 85 Ohio St.3d 433, 437, 709 N.E.2d 140, quoting Batson,476 U.S. at 98, fn. 21).
 {¶ 15} Here, the trial court did not clearly err by finding that the appellant failed to prove purposeful racial discrimination in the state's peremptory challenge of Juror Sanders. A juror's self-professed familiarity with the defendant or his family and the resulting discomfort in deciding his fate are race neutral reasons for exclusion.
 {¶ 16} Nonetheless, appellant claims that because neighborhood friendships are likely to run along racial lines, the state's proffered reason for excusing Juror Sanders is veiled discrimination. This argument has little persuasive effect where the juror herself expresses discomfort in sitting on the case. Based on the present record, we find no basis to conclude that the trial court improperly or inadvertently overlooked evidence of veiled discrimination.
 {¶ 17} Accordingly, we overrule appellant's first assignment of error.
 II {¶ 18} In his second assignment of error, appellant argues that his burglary conviction violates his due process rights because the record does not contain sufficient evidence to establish an element of the offense, whether he trespassed in an "occupied structure."
 {¶ 19} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. See, e.g., State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citing Jackson v. Virginia
(1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 20} R.C. 2911.12 contains the essential elements of the burglary offense with which the state charged appellant:[2] "(A) No person, by force, stealth, or deception, shall do any of the following: (1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offenseà"
 {¶ 21} R.C. 2909.01(C) defines an "occupied structure" as follows: "`Occupied structure' means any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies: (1) It is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present. (2) At the time, it is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present. (3) At the time, it is specially adapted for the overnight accommodation of any person, whether or not any person is actually present. (4) At the time, any person is present or likely to be present in it."
 {¶ 22} In this case, the only definition that could apply to Tomlinson's office is R.C. 2901.01(C)(4). Absolutely no evidence exists to show that the office is used as a temporary or permanent habitation or that it is adapted for overnight accommodations. Thus, the question of whether appellant trespassed in an "occupied structure" turns on whether "any person [was] present or likely to be present in" Tomlinson's office.
 {¶ 23} In determining what constitutes sufficient proof that a person is "likely to be present," the Ohio Supreme Court has held that the state meets its burden if it presents evidence "that an occupied structure is a permanent dwelling house which is regularly inhabited, that the occupying family was in and out on the day in question, and that such house was burglarized when the family was temporarily absent[.]" State v. Kilby
(1977), 50 Ohio St.2d 21, 361 N.E.2d 1336, paragraph one of the syllabus (construing former R.C. 2911.11(A)(3)); see, also, State v. Lockhart
(1996), 115 Ohio App.3d 370, 373, 685 N.E.2d 564; State v. Hibbard,
Butler App. Nos. CA2001-12-276, CA2001-12-286, 2003-Ohio-707, ¶ 12. The court further held that the "likely to be present" requirement is intended to target "the type and use of the occupied structure and not literally whether individuals will be home from work or play at a particular time." Kilby, 50 Ohio St.2d at 25-26.
 {¶ 24} Here, however, the Kilby rule cannot apply because no evidence exists that the office "is a permanent dwelling house which is regularly inhabited." Thus, we must determine whether other evidence exists to show that someone was likely to be present at Tomlinson's office at 5:45 p.m. on a Saturday. The only evidence relevant to this question is that neither Tomlinson nor anyone else was likely to be present. Tomlinson himself admitted that it was "highly unlikely" that he would be present in his office on a late Saturday afternoon. He stated that he normally worked during the week and sometimes on Saturday mornings. No evidence exists that anyone else, such as a cleaning crew, normally would be present in his office on a Saturday afternoon.
 {¶ 25} However, the state asserts that because the Tomlinsons eventually entered the premises while appellant was trespassing, the requirement that a person be present was satisfied. Essentially, the state argues that even though no one was present at the time appellant initially trespassed, because someone happened upon the premises during his trespass, the crime became a burglary.
 {¶ 26} In State v. Fontes (2000), 87 Ohio St.3d 527, 721 N.E.2d 1037, syllabus, the court held that to support an R.C. 2911.11 burglary conviction, a defendant need not form the intent to commit a criminal offense before he trespasses, but instead, may form the intent "at any point during the course of a trespass." The court, quoting the court of appeals, stated: "`[A] person who by force, stealth, or deception, trespasses in an occupied structure, is continuing a criminal trespass * * * so long as he is there without permission. * * * Thus, if during the course of this trespass a defendant forms the purpose to commit a felony offense, the crime of aggravated burglary is committed at that time. Because the `purpose to commit * * * any criminal offense' element of R.C. 2911.11(A)(1) may be formed while the trespass is in progress, we find no error in the trial court's jury instruction to this effect.'"Fontes, 87 Ohio St.3d at 530; see, also, State v. Powell (1991),59 Ohio St.3d 62, 571 N.E.2d 125, at paragraph one of the syllabus.
 {¶ 27} In State v. Davis, Cuyahoga App. No. 83033, 2004-Ohio-1908, at ¶ 16, the court, applying Fontes, concluded that sufficient evidence existed to show that the defendant trespassed in an occupied structure when the victim entered the home after the defendant had already entered the premises. The court explained: "[T]he `trespass' element of burglary can constitute more than the initial entry and the trespass continues throughout the duration of the offense. Therefore, when [the victim] arrived home, [the defendant's] trespass took on the character of remaining on the premises, which took place while [the victim] was present, satisfying R.C. 2911.12(A)(1)."
 {¶ 28} Thus, according to the Davis court's interpretation of Fontes,
at the time of the initial trespass, a person need not be present in order to sustain an R.C. 2911.12(A)(1) conviction. Instead, a burglary conviction may stand if, during anytime that the defendant is trespassing, a person enters the premises. Essentially, the person's presence converts a breaking and entering offense into a burglary offense.
 {¶ 29} Here, this is the exact situation. When appellant initially entered the premises, no other person was present. Thus, at that point, he was breaking and entering. However, once the Tomlinsons entered the premises, the offense became a burglary.
 {¶ 30} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error and affirm the trial court's judgment.[3]
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.
If A Stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, It is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J.: Concurs in Judgment and Opinion.
Evans, J.: Not Participating.
[2] During the trial court proceedings, the state never specifically identified whether it was proceeding under R.C. 2911.12(A)(1) or (2). However, on appeal, it limits its argument to R.C. 2911.12(A)(1) and the indictment mirrors the language of R.C. 2911.12(A)(1).
[3] Our disposition of this appeal renders appellant's March 3, 2004 motion to "proceed to judgment moot.