JOURNAL ENTRY AND OPINION
{¶ 1} Thomas Pondexter appeals from his conviction for robbery, with both one- and three-year firearm specifications, following a jury trial before Judge Kenneth R. Callahan. He claims it was error to deny his motion to suppress the victim's out-of-court identification. We affirm and remand for correction of the sentencing journal entry.
 {¶ 2} From the record we glean the following: In January of 2003, at about 1:30 a.m., Craig Stanley stopped to pick up take-out food at a bar on the corner of East 93rd and Manor Avenue. He parked his car in front of the building and exited. As he neared the door, he was approached from the left by a man carrying a gun who demanded his money and car keys. He gave him the items and went inside to call 9-1-1.
 {¶ 3} Stanley described his assailant as an African-American male, approximately 6'1" tall and 190 lbs., wearing a black hat, a black coat with red trim, a hooded black sweatshirt, and carrying a chrome plated .38 pistol.
 {¶ 4} At approximately 11:30 a.m. that same day, Cleveland Police Officer Robert Strollo, patrolling the area of East 99th and Hilbert Avenue, saw a red car surrounded by several men. He suspected drug activity and ran a check on its license plate. When he learned that the car was reported as stolen, he called for assistance and, in the company of another officer, approached it. The pedestrians disbursed, and Gayland Wright, sitting in the driver's seat, was arrested.
 {¶ 5} Officer Strollo then spoke with seventeen-year-old Michael Smith who told him that Pondexter had tried to sell him the car, and that he had seen Pondexter removing items, or stripping it.
 {¶ 6} After learning his car had been recovered, Stanley met with Detective Robert Pirinelli and told him that he recognized the gunman as someone he had seen around the neighborhood and the brother of someone he knew, and was able to give the detective a partial name. Based upon this information and in attempt to identify his assailant, Stanley was shown two Bureau of Motor Vehicle ("BMV") photos on a computer screen.
 {¶ 7} The first photo-image was that of Wright whom Stanley immediately discounted. When shown Pondexter's image, however, Stanley positively identified him as his assailant. Although both BMV photo-images included the subject's height and weight information, Stanley claimed he looked only at the faces.
 {¶ 8} Through an amended indictment,[1] Pondexter was charged with robbery,[2] with both a one-year and a three-year firearm specification,[3] a notice of prior conviction specification[4] and a repeat violent offender specification.[5] He moved to suppress Stanley's BMV photo-image identification, but his motion was denied.
 {¶ 9} At trial, Stanley testified that he had a clear view of Pondexter's face for approximately forty-five seconds during the robbery because the area was well lit and the two men were only a foot apart. Smith testified that he knew Pondexter, who approached him the day of the robbery and asked him if he wanted to buy the car. When Smith asked for the title to the car, Pondexter claimed he did not have it because the car belonged to his aunt. Smith, who recognized the car from the neighborhood, said he declined the offer.
 {¶ 10} Pondexter was found guilty on all counts with the repeat violent offender and notice of prior conviction specifications bifurcated until sentencing. He was sentenced to seven years in prison for robbery, and merged sentences of one and three years on the firearm specifications, to run prior and consecutive, and five years of post release control.[6] He claims a single assignment of error set forth in the appendix to this opinion.
 {¶ 11} Pondexter claims that Stanley's police station identification was unnecessarily suggestive. When reviewing the denial of a motion to suppress, we give deference to the judge's factual findings, but we review the application of law to fact de novo.[7]
 {¶ 12} We examine the procedure used to identify a suspect to determine whether, under the totality of the circumstances, it was unnecessarily suggestive and unreliable.[8] The factors to be considered include: (1) the opportunity of the witness to view the accused at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the accused, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.[9]
 {¶ 13} Pondexter claims that the out-of-court identification should have been suppressed because the lighting conditions under which Stanley viewed his assailant were generally poor, Stanley neglected to advise the detectives that he knew Wright, and the BMV photo-images also provided identifying physical information.
 {¶ 14} In State v. Hawn,[10] the court analyzed an out-of-court identification where a single BMV photograph was displayed to four witnesses, all of whom identified the defendant as the robber. The court held that the identification was not unnecessarily suggestive, noting that the photograph was presented to the witnesses within an hour after the robbery, that each of the witnesses had the opportunity to observe their assailant, and that each witness gave a physical description of the defendant before being shown the photograph.
 {¶ 15} Similarly, Stanley testified that throughout the course of the robbery he had ample opportunity to clearly see his assailant's face in the approximate forty-five seconds of the robbery and his initial description of that person virtually matched that of Pondexter. He also claimed that he was familiar with his assailant because he had seen him before, but could simply not remember his name. Moreover, when shown the two BMV photo-images on the computer, he dismissed the first image and immediately identified the second as that of his assailant, expressing no doubts about his identification.
 {¶ 16} Although Pondexter takes issue over the fact that the images also provided the subject's height, weight, name, etc., Stanley testified that he did not look at this information before identifying the photograph. This assignment of error lacks merit.
 {¶ 17} We note as plain error, however, that Pondexter was sentenced to five years of mandatory post-release control. Because he was convicted of robbery, a second degree felony, under the guidelines of R.C. 2967.28, he was required to serve a mandatory sentence of only three years of post-release control. We remand this case for correction of the sentencing journal entry to properly reflect the correct mandatory post-release control.
Judgment affirmed and case remanded.
APPENDIX A:
 "I. The trial court erred in permitting evidence of an out ofcourt identification of the defendant-appellant from a suggestivepolice identification procedure."
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, J., concurs.
 Corrigan, A.J., concurs in judgment only.
[1] The original indictment was for aggravated robbery, R.C.2911.01 but, because of an apparent flaw in the grand jury proceedings, it was amended to robbery.
[2] R.C. 2911.02.
[3] R.C. 2941.141, R.C. 2941.145.
[4] R.C. 2929.13.
[5] R.C. 2941.149.
[6] R.C. 2967.28.
[7] Cleveland v. Morales, Cuyahoga App. No. 81083, 2002-Ohio-5862; State v. Davis, Cuyahoga App. No. 83033, 2004-Ohio-1908.
[8] State v. Gross, 97 Ohio St.3d 121, 2002-Ohio-5524,776 N.E.2d 1061.
[9] State v. Broom (1988), 40 Ohio St.3d 277, 284,533 N.E.2d 682, citing Manson v. Brathwaite (1977), 432 U.S. 98, 114,97 S.Ct. 2243, 53 L.Ed.2d 140.
[10] (October 31, 2003), Portage App. No. 2002-P-0042.