[Cite as *State v. Johnson*, 2018-Ohio-169.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 105560

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MARVIN F. JOHNSON, SR.

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART; REVERSED IN PART;
AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-594187-B

**BEFORE:** Laster Mays, J., Kilbane, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** January 18, 2018

**ATTORNEY FOR APPELLANT**

Gregory Scott Robey
Robey & Robey
14402 Granger Road
Cleveland, Ohio 44137


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By:    Patrick J. Lavelle
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

ANITA LASTER MAYS, J.:

{¶1} Defendant-appellant Marvin F. Johnson, Sr. ("Johnson") appeals the trial court's denial of his motion to suppress evidence, as well as the trial court's imposition of an eight-year sentence, after initially imposing a six-year sentence. We affirm the trial court's denial of the motion to suppress but reverse the imposition of the eight-year sentence.

## I.    Background and Facts

{¶2} On April 29, 2015, Johnson entered a plea of not guilty to: (1) drug trafficking, R.C. 2925.03; (2) drug possession, R.C. 2925.11; and (3) possession of criminal tools, R.C. 2923.24. Each charge carried forfeiture specifications. Johnson rejected a two-year prison term plea offer and filed a motion to suppress evidence, which was denied by the trial court on December 14, 2015.

{¶3} Johnson pleaded no contest on December 15, 2015, and was found guilty. Johnson suffers from a serious heart condition known as Wolff-Parkinson-White syndrome and high blood pressure. The January 20, 2016 sentencing hearing was continued several times due to Johnson's health issues and retention of new counsel. On May 26, 2016, Johnson was sentenced to a six-year prison term and declared to be indigent. The trial court also placed Johnson on supervised release and electronic home detention so that Johnson could undergo heart surgery scheduled for July 22, 2016. Johnson was directed to report for jail on August 1, 2016.

{¶4}   Johnson's retained counsel filed a motion for appointment of counsel as a result of the trial court's declaration of indigence on July 5, 2016.   The trial court granted the motion and appointed different counsel on July 6, 2016.   On July 12, 2016, the trial court vacated the order, sua sponte, because Johnson was represented by retained counsel throughout the proceedings and had failed to include an affidavit of indigence with his motion.

{¶5}   On July 14, 2016, the trial court set a bond hearing for July 25, 2016, after Johnson reportedly tested positive for marijuana.   Johnson did not appear because he was recovering from the July 22, 2016 heart surgery, and counsel did not notify the trial court. The trial court revoked Johnson's bond and issued a capias.

{¶6}   Johnson was still under post-surgical medical care and did not report on August 1, 2016, nor did counsel notify the trial court.   After turning himself in, Johnson was resentenced to an eight-year prison term on February 13, 2017, resulting in the instant appeal.

II.   **Assignments of Error**

{¶7}   Johnson presents four assigned errors:

I.   The trial court erred when it denied appellant's motion to suppress evidence.

II.   The trial court erred in imposing an eight-year prison term that is not supported by the record.

III.   The trial court erred when it resentenced appellant to an increased prison term of eight years after initially imposing a six-year term.

IV.   Johnson was denied the effective assistance of counsel when, at the

resentencing hearing, trial counsel failed to object to an increased prison term of eight years; and when trial counsel failed to object to the issuance of a capias for Johnson's failure to appear in court due to medical reasons.

## III. Discussion

### A. Motion to Suppress

{¶8} Johnson's first assignment of error addresses the motion to suppress. The hybrid nature of appellate review of a trial court's denial of a motion to suppress, involving mixed questions of law and fact, dictates that we give deference to the trial judge's findings of fact, but conduct a de novo review of application of the law to the facts *State v. Lennon,* 8th Dist. Cuyahoga No. 104344, 2017-Ohio-2753, ¶ 45, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8, and *State v. Davis*, 8th Dist. Cuyahoga No. 83033, 2004-Ohio-1908.

{¶9} Search warrant affidavits enjoy a presumption of validity. *State v. Sheron*, 8th Dist. Cuyahoga No. 98837, 2013-Ohio-1989, ¶ 29, citing *State v. Roberts,* 62 Ohio St.2d 170, 178, 405 N.E.2d 247 (1980).

> In *Roberts*, the Ohio Supreme Court held that "a challenge to the factual veracity of a warrant affidavit must be supported by an offer of proof which specifically outlines the portions of the affidavit alleged to be false, and the supporting reasons for the defendant's claim." *Id.*, citing *Franks v. Delaware*, 438 U.S. 154, 171-172, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). As the United States Supreme Court held in *Franks*, a challenge to the affiant's veracity requires "allegations of deliberate falsehood or of reckless disregard for the truth." *Id*. at 171. Such allegations must be supported by an "offer of proof [that] should include the submission of affidavits or otherwise reliable statements, or their absence should be satisfactorily explained." *Roberts* at 178.

> In order to require a trial court to hold a hearing, a defendant must first make

a "substantial preliminary showing" that the affiant included a false statement in the affidavit either knowingly and intentionally, or with reckless disregard for the truth. *Id.* at 177; *Franks* at 155. Even if a defendant makes a sufficient preliminary showing, a hearing is not required unless, without the allegedly false statements, the affidavit is unable to support a finding of probable cause. *Id.* at 178; *Franks* at 171-172.

*Sheron* at ¶ 30-31.

**{¶10}** *Franks* requires (1) "allegations of deliberate falsehood" or of a "reckless disregard for the truth"; (2) an "offer of proof"; (3) identification of the false affidavit sections; (4) an explanation of the supporting rationale; and (5) sworn statements or an explanation for their absence. *Franks* at 171.

**{¶11}** On February 12, 2015, a search warrant was issued for Johnson's residence in Euclid, Ohio. Johnson and the codefendant in this case were sleeping in the living room at the time the warrant was executed.[1] Both were handcuffed while officers searched the residence.

**{¶12}** Johnson challenges paragraphs one, three, and four through nine of the affidavit and asserts that: (1) the affidavit contains materially false statements or omissions that were made with a reckless disregard for the truth, and (2) that probable cause was lacking because there was no evidence of ongoing drug trafficking. The trial court denied the motion:

> Defendant's motion to suppress is overruled. Upon review of testimony at hearing, court finds that search warrant was issued pursuant to fresh evidence set forth in the affidavit, including a controlled buy performed within appropriate time. Court further finds that background information,

---

[1] The codefendant is not a party to this appeal.

while vague as to operative facts, was mere surplusage and did not form the basis for issuance of the search warrant.

*See* journal entry no. 92089300 (Dec.15, 2015), at p. 1.

{¶13} Euclid Narcotics Detective Dave Carpenter ("Carpenter") was the affiant of the affidavit. Paragraph one of the affidavit states that "within the past year, the City of Euclid Police Department has received complaints of suspected drug activity occurring" at the premises. Johnson denied that police received any complaints. The second paragraph states that, based on "this information" affiant was in contact with a confidential informant ("CI") who stated that he or she made purchases from a "black male" and indicated a name for the seller, which is redacted. Paragraph three references an investigation of the "possible identity" of the seller, and learned from a telephone call from a CMHA police officer that Johnson was selling drugs from the premises.

{¶14} Paragraphs four through nine recite: (1) identification of Johnson's LEADS[2] photograph by the CI, (2) contact by the CI within the past 48 hours stating Johnson was selling heroin, (3) and the arrangement for the buy at affiant's request. The CI was searched, equipped with surveillance equipment, and driven to the premises by the affiant, who listened to the transaction and the substance the CI obtained tested positive for heroin.

{¶15} Carpenter was the sole witness at the suppression hearing. Carpenter testified, "approximately in March of 2014, we received information or a complaint from

---

[2] LEADS is a statewide electronic reporting and criminal investigation system used by law enforcement. Ohio Adm.Code 4501:2-10(W).

refused [sic] people, unidentified sources, of drug trafficking, specifically involving heroin sales at 27195 Oriole Avenue, City of Euclid." (Tr. 23.)

{¶16} As a result of the call, the department checked the address history, auditor information, and service calls to the address. Due to the small staff, Carpenter personally conducted surveillance and observed a "male cutting the grass" and no "short-term traffic." (Tr. 24.) He also followed Johnson once by car but discovered no illegal activity.

{¶17} Carpenter testified there were several telephone call complaints about drug activity at the premises after the March 14, 2014 call, though this information was not recounted in the affidavit. Carpenter also "received information from a person that could be a CI that alleged that this person could also purchase drugs" from the residence. (Tr. 28.) There were no written reports documenting the complaints. The only records consisted of basic property ownership information, service calls to Johnson's address, and Ohio Bureau of Motor Vehicle printouts.

{¶18} Carpenter's partner, Detective Jose Alcantara ("Alcantara"), was formerly a police officer with the Cuyahoga Metropolitan Housing Authority ("CMHA"). Fortuitously, Alcantara received a call from a former CMHA colleague "probably later in the year, probably around October, November it started, we received a second complaint" involving drug sales by Johnson. Carpenter "believe[d]" the CMHA contact was made in November 2014 because Johnson's LEADS record was run again on November 21, 2014.

**{¶19}** Carpenter was not a party to Alcantara's conversation with the CMHA contact and did not take notes when informed of the call by Alcantara. Carpenter did write down the names of Johnson and his female friend, address and phone number.

**{¶20}** Carpenter explained, regarding the CI:

> I had been in contact with this particular confidential informant which we tried, attempted to do previous purchases; it just didn't happen. Again, that doesn't get documented if it doesn't happen; didn't document anything on that.

(Tr. 29.) The department frequently received complaints from individuals that were not developed for prosecution.

**{¶21}** Carpenter reiterated that no physical evidence exists regarding the department's receipt of any of the alleged complaints regarding drug sales. "Initially," there was a "single complaint." (Tr. 50.) No records exist regarding the "telephone tip," from Detective Alcantara's former coworker at CMHA. (Tr. 52.)

**{¶22}** The CI initially contacted Carpenter in May or June 2014, again during the summer, and again during the fall. Carpenter met with the CI two or three times beginning in the early fall of 2014 to attempt to set up a drug buy from Johnson. Carpenter also contacted the CI several times by telephone and text message to contact Johnson and initiate a buy.

**{¶23}** Around February 8, 2015, shortly after the CI completed serving a 30-day jail term for an undisclosed offense, Carpenter received a telephone call from the CI stating that Johnson was currently selling heroin.

**{¶24}** Carpenter recited the steps taken to protect the integrity of the controlled buy

that took place on February 10, 2015. The CI was equipped with audio-visual surveillance equipment. Carpenter drove the CI to Johnson's residence.

{¶25} Carpenter heard Johnson discussing the price of heroin on the audio monitor but could not recall "off the top of [his] head" what the price was. (Tr. 38.) The CI observed Johnson remove the heroin from a plastic bag, purchased the heroin and emerged from the residence with a "paper-fold" containing "suspected heroin." (Tr 40.) During the purchase, Johnson informed the CI that he would sell the CI one gram of heroin for $100.

{¶26} Over defense counsel's objections, still photographs of the video allegedly taken during the transaction with Johnson were introduced into evidence. Defense argued that the dispute centered on the inaccuracies in the affidavit and lack of probable cause and not whether drugs were found as a result of the warrant execution.

{¶27} The CI contacted Carpenter 48 hours prior to execution of the search warrant. The controlled buy took place on February 10, 2015, the search warrant was issued on February 12, 2015, and the warrant was executed on February 13, 2015.

{¶28} The weight of the controlled buy was .6 grams for $60, but it was not charged in the instant indictment. Instead, Johnson was charged for the weight of the heroin located as the result of the warrant, exceeding 50 grams but less than 250 grams.

{¶29} Johnson argues that paragraph one of the affidavit fails to state dates and times that drug sale complaints were made and other details documenting the occurrences. There is also a failure to specify what drugs were involved or any other information

supporting the representations. Johnson also challenges the delay between the March 2014 initial complaint and the February 2015 warrant, as well as that the failure to include that surveillance revealed no drug activity.

{¶30} The *Franks* challenge to paragraph three of the affidavit is that the affiant did not receive information directly from the CMHA officer but received it from another detective. The statement is cursory and does not indicate the foundation for the CMHA officer's representation.

{¶31} Johnson makes a *Franks* argument as well as a *Gates*[3] probable cause challenge to paragraphs four through nine. Johnson argues that the affiant's testimony demonstrated that there were several unsuccessful attempts to buy drugs from Johnson, casting serious doubts as to the CI's credibility. *See State v. Graddy*, 55 Ohio St.2d 132, 378 N.E.2d 723 (1978), rejecting bare minimum averments to establish a CI's credibility. He asserts there was no evidence that there were additional drugs present.

{¶32} Johnson's reliance on *Franks* and *Gates* is misplaced. His general challenges to the affidavit do not overcome the presumption of validity afforded to the warrant affidavit. *Sheron*, 8th Dist. Cuyahoga No. 98837, 2013-Ohio-1989, ¶ 31. Johnson has failed to make a substantial preliminary showing of the knowing, intentional,

---

[3] As long as the "magistrate had a substantial basis for concluding that probable cause existed, a reviewing court should uphold the warrant." *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph two of the syllabus, citing *Illinois v. Gates,* 462 U.S. 213, 294, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The approach is also known as a "totality-of-the-circumstances" standard of review. *George* at 327*, Gates* at 238.

or reckless inclusion of a false statement, or establish that, without the false statements, the warrant "affidavit is unable to support a finding of probable cause." *Id.,* citing *Roberts,* 62 Ohio St.2d at 178, 405 N.E.2d 247 (1980), and *Franks*, 438 U.S. 155, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Removing the language deemed surplusage by the trial court, it is beyond dispute that the controlled buy took place, heroin was purchased, and a search warrant executed within a 36- to 48-hour time frame.

{¶33} The first assigned error is without merit.

B. **Legality of Prison Term**

1. **Contrary to Law**

{¶34} Johnson argues that the trial court failed to consider the sentencing factors of R.C. 2929.12(C)(3) in his second assigned error. The Ohio Supreme Court recently clarified the current standard for appellate review of felony sentences:

> Applying the plain language of R.C. 2953.08(G)(2), we hold that an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law. In other words, an appellate court need not apply the test set out by the plurality in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124.

*State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1.

{¶35} Specifically, Johnson offers that the trial court did not consider that: (1) none of the seriousness factors listed under R.C. 2929.12(B) apply; (2) Johnson did not intend or expect to cause physical harm to person or property under R.C. 2929.12(C)(3); (3) his conduct was mitigated due to documented heart disease, high blood pressure, and

kidney problems impacting his ability to work; and (4) Johnson's last felony conviction was in 2001, 15 years earlier and he expressed sincere remorse at sentencing (R.C. 2929.12(E)(3) and (5)). Finally, Johnson argues that the serious nature of his medical condition made the offense less likely to recur (R.C. 2929.12(E)(4)).

**{¶36}** Johnson shared the cited mitigation and sentencing factors with the trial court. He also informed the court that a surgical heart ablation procedure requiring an overnight stay and a full week of recovery was scheduled for July 22, 2016. The information was offered to the trial court for the purpose of mitigation of the sentence as well as possible suspension of the sentence.

**{¶37}** For a sentence to be contrary to law, the sentence must fall "outside the statutory range" for the offense or the record must reflect a failure by the trial court to "consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors in R.C. 2929.12." *State v. Lee*, 8th Dist. Cuyahoga No. 104190, 2016-Ohio-8317, ¶ 9, citing *State v. Hinton*, 8th Dist. Cuyahoga No. 102710, 2015-Ohio-4907, ¶ 10, citing *State v. Smith*, 8th Dist. Cuyahoga No. 100206, 2014-Ohio-1520, ¶ 13.

**{¶38}** Further, there is no mandatory duty for a trial court to explain its analysis of the statutory sentences pursuant to our holding in *State v. Kronenberg*, 8th Dist. Cuyahoga No. 101403, 2015-Ohio-1020, ¶ 27. A trial court is only required to indicate that the statutory factors have been considered. *Id.*, citing *State v. Kamleh*, 8th Dist. Cuyahoga No. 97092, 2012-Ohio-2061, ¶ 61.

**{¶39}** The sentence is within the statutory range, and the trial court considered the sentencing factors at the sentencing hearing. However, we do find that Johnson poses a proper challenge to the imposition of the eight-year sentence in February 2017.

### 2. Eight-Year Sentence

**{¶40}** Johnson argues in the third assignment of error that the trial court erred in resentencing him to an eight-year term. The trial court initially sentenced Johnson to a six-year prison term, plus court costs on the first count, and six months on the third count to be served concurrently, with forfeitures and a waiver of the mandatory fine. Following the stated sentence, the trial court added to the entry:

> [E]xecution of sentence is stayed pending heart ablation procedure (per letter from Patrick J. Tchou, M.D., Cleveland Clinic). Defendant is to appear to begin serving sentence no later than August 1, 2016 at 9:00 a.m., or sentence will be vacated and new sentence will be imposed. Pending execution of sentence, defendant is to remain on bond. Conditions amended as follows: C.S.R. with home detention and electronic monitoring. Court notes objections of the state to stay of execution of sentence.

*See* journal entry no. 94295772 (May 26, 2016).

**{¶41}** Johnson was directed to appear on July 25, 2016, for a violation hearing for testing positive for marijuana. Due to the surgery on July 22, 2016, Johnson did not appear and bail was revoked and a capias issued. Still under medical care, Johnson did not report to jail on August 1, 2016. Counsel did not advise the court. An August 12, 2016 entry provided that Johnson was "remanded." A December 8, 2016 entry reflected that Johnson was in custody.

**{¶42}** A December 19, 2016 journal entry provided that, "at the request of

defendant" a "re-sentencing hearing is set" for January 9, 2017, at 9:00 a.m. A January 9, 2017 entry rescheduled that hearing to January 18, 2017, at defendant's request.

{¶43} There are no written requests for resentencing reflected in the record nor motions to vacate the sentence, though Johnson did file motions requesting the appointment of appellate counsel. He also submitted medical evidence of his surgeries and his physician's recommendation that his condition required the attention of a cardiologist, and not a general physician.

{¶44} On February 14, 2017, the trial court sentenced Johnson to an increased sentence of 8 years for the trafficking offense, to run concurrently with six months on the drug possession offense, with forfeiture specifications.

{¶45} "A criminal sentence is final upon issuance of a final order," not upon execution of sentence. *State v. Carlisle*, 131 Ohio St.3d 127, 2011-Ohio-6553, 961 N.E.2d 671, ¶ 11, 13. A sentencing entry is a final order when, "the judgment entry sets forth (1) the fact of the conviction, (2) the sentence, (3) the judge's signature, and (4) the time stamp indicating the entry upon the journal by the clerk." *State v. Wilson*, 8th Dist. Cuyahoga No. 105535, 2017-Ohio-8068, ¶ 24, citing *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, ¶ 14; Crim.R. 32.

{¶46} The trial court lacked authority to resentence appellant. The state concedes the error, and we agree that it has merit. The original sentence is still in effect.

{¶47} The fourth assigned error is moot in light of our findings. Loc.R. 12(A)(1)(c).

**IV.    Conclusion**

**{¶48}**    The trial court's denial of the motion to suppress is affirmed.   As the state correctly observed, the trial court lacked jurisdiction to modify the   sentence pursuant to *Carlisle*.   We hereby affirm in part, reverse in part, and remand the case for the limited purpose of executing the original sentence.

It is, therefore, ordered that appellee and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the   common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
ANITA LASTER MAYS, JUDGE

MARY EILEEN KILBANE, P.J., and
TIM McCORMACK, J., CONCUR