[Cite as *State v. Smith*, 2014-Ohio-1520.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 100206**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## BRANDON J. SMITH

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-12-566663-A

**BEFORE:**   Stewart, J., S. Gallagher, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:**   April 10, 2014

**ATTORNEY FOR APPELLANT**

Ashley L. Jones
75 Public Square, Suite 714
Cleveland, OH    44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    Edward Fadel
Assistant County Prosecutor
The Justice Center
1200 Ontario Street, 9th Floor
Cleveland, OH    44113

MELODY J. STEWART, J.:

{¶1} A jury found defendant-appellant Brandon Smith guilty of fifth- degree felony counts of forgery and possession of criminal tools relating to his possession of several $100 counterfeit bills and tools associated with counterfeiting those bills. At sentencing, defense counsel told the court that she had reviewed a presentence investigation report and learned for the first time that Smith suffered from a major depressive disorder with psychotic features. Defense counsel faulted herself for not seeking a psychiatric referral or employing mental health services before going to trial. She told the court that had she known about Smith's mental health issues, she would have employed different strategies and tactics both before and during trial — in essence, admitting that she did not provide effective assistance of counsel. The court disagreed with defense counsel, telling her that she represented Smith "more than competently" and that its observation of Smith at trial gave it no reason to think that Smith was mentally incompetent. That decision, along with the court's decision to impose maximum 12-month sentences on each count, forms the basis for appeal.

I

{¶2} To succeed on an ineffective assistance of counsel claim, Smith must show that: (1) counsel's failures fell below an objective standard of reasonableness and (2) counsel's deficient performance was prejudicial. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This is a difficult standard to meet.

As to the first prong of the *Strickland* test, counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. As to the second prong of the *Strickland* test, the defendant can show prejudice only if there is "a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus. The defendant must prove both prongs of the *Strickland* test to prevail on a claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 687.

A

**{¶3}** Defense counsel's concession of deficient performance based on her failing to discover the extent of Smith's psychological problems was a purely subjective assessment of her performance, so that concession is not dispositive of the first prong of the *Strickland* test. Not only can trial attorneys be their own harshest critics, it is not unheard of for counsel in the zealous advocacy of a client, to blame themselves for errors in an attempt to gain a new trial. In saying this, we stress that we make no such accusations about defense counsel in this case, but merely wish to point out why the courts often reject the subjective assessments of attorneys in favor of an objective assessment of their performance. *See, e.g., McAfee v. Thurmer*, 589 F.3d 353, 356-357 (7th Cir.2009).

**{¶4}** Viewing the matter objectively, we see no basis for concluding that defense counsel's representation fell below a standard of reasonableness. At bottom, Smith's

claim is that defense counsel did not properly investigate his case prior to trial. When assessing the reasonableness of an attorney's investigation, a court must consider not only the evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further. *Wiggins v. Smith*, 539 U.S. 510, 527, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). As the court noted, Smith showed no symptoms prior to trial that would have alerted anyone involved with the case to the possibility that Smith needed some form of mental health intervention. In fact, the court found that regardless of whether Smith suffered from a mental illness, he was "competent and sane" and nothing in the psychological report prepared for sentencing indicated anything to the contrary. There is simply nothing in the record to suggest that defense counsel should have been aware that Smith had psychological issues prior to trial. It follows that defense counsel's representation did not fall beneath an objective standard of reasonableness.

B

{¶5} Even if defense counsel had been aware of Smith's psychological issues prior to trial and raised them to the court, there is no reasonable probability that the outcome would have been different.

{¶6} Defense counsel told the court that had she known about Smith's problems, she would have urged him to take medication. It was her belief that if medicated, Smith may have accepted a plea bargain that he rejected on the eve of trial. Defense counsel also believed that if medicated, Smith would not have insisted on testifying.

{¶7} Smith offers nothing definitive about his condition — the best he can say is that his failure to be medicated likely impacted his ability to think or make decisions. We have not been told what medication Smith needed nor is it obvious from the record that he needed medication at all apart from the sleeping pills he was taking at the time of trial.

{¶8} At best, Smith's argument is speculative; at worst, it relies on hindsight as a basis for overturning strategic decisions that he personally made. Smith rejected a negotiated plea bargain to a single fifth-degree felony count of possession of criminal tools because he would only plead to a misdemeanor: "I don't have any felony record and I'm not guilty on this crime so I'm not going to accept a felony for something I didn't know the money was counterfeit." He rejected the plea bargain despite the court very carefully outlining the ramifications of taking the plea bargain; primarily, that the plea bargain left open the possibility of community controlled sanctions. The court advised Smith that if found guilty, he might be ineligible for community control because he violated bond while awaiting trial. When the court questioned Smith to make sure that he understood that his "choice may affect some consequences," Smith said, "I understand, sir." Given the thoroughness of the court's explanation about the consequences of rejecting the plea bargain, we have no basis for believing that a medicated Smith would have been any more amenable to accepting the plea bargain.

{¶9} We likewise find no basis for Smith's claim that, if medicated, he would have listened to defense counsel's advice not to testify. Smith not only chose to testify against

defense counsel's advice, he apparently also rejected defense counsel's advice by insisting on replaying a videotape recording of his interrogation with the police that the state offered into evidence during its case-in-chief. His testimony went badly — it reinforced to the jury the various stories he told the police about how he claimed to have obtained the counterfeit bills, cementing his image as untrustworthy. Smith first told the police that he obtained the counterfeit bills while purchasing a $450 cell phone, but dropped that story when a police officer questioned why he would receive more $100 bills in change than the supposed price he paid for the cell phone. Smith then told the police that he must have obtained the money while "clubbing" in downtown Cleveland, although again he could not explain why someone would have given him that amount of money. Smith then settled on the story that he obtained the counterfeit bills when buying a large quantity of marijuana (four ounces at a cost of $1,400), but that story suffered because one day after claiming to have purchased so much marijuana, he purchased $15 worth of marijuana from a restaurant employee he met in a shopping mall — Smith claimed that he smelled a different kind of marijuana and wanted "variety." What made that story even more unbelievable was that Smith had been lodging in a hotel adjacent to the shopping mall and actually walked to the mall — so he would have had ready access to the marijuana he previously purchased unless he managed to smoke all of it in one day.

{¶10} Although Smith's testimony showed him to lack credibility, we cannot find any reasonable probability that the outcome of trial would have been different if he had not testified. The state offered credible evidence to show that Smith created the

counterfeit bills. The restaurant employee who sold marijuana to Smith said that he first encountered Smith in the shopping mall lavatory and that he agreed to sell Smith a small quantity of marijuana. Smith then asked the restaurant employee if he would be willing to exchange a counterfeit $100 bill. The employee refused and alerted his manager. The manager called mall security, who in turn called the police. The police searched Smith's hotel room and found nothing, but during his interrogation, Smith inquired about a printer. The police went back to the hotel room and found a printer-scanner and a bag containing oven cleaner and a toothbrush. A treasury department officer testified counterfeiters commonly used oven cleaner to dissolve the ink on valid $5 notes and used toothbrushes to scrub the ink away. Counterfeiters would then scan a valid $100 bill on a computer and print the scanned image over the note.

{¶11} Given the strength of the state's case and Smith's obvious lack of credibility, we see no basis for his claim that the outcome of trial would have been different had he been medicated and not testified. The state would still have been able to play the tape of Smith's interrogation It follows that he cannot establish both prongs of the *Strickland* test to show ineffective assistance of counsel.

II

{¶12} The court sentenced Smith to the 12-month maximum sentence each on the fifth-degree felony forgery and possession of criminal tool counts and ordered Smith to serve those counts concurrently. Smith argues that the court abused its discretion by doing so because none of the factors in R.C. 2929.12(C) justified maximum sentences.

**{¶13}** R.C. 2953.08(A) sets forth the grounds for appeal by a defendant. As applicable here, Smith's only viable basis for seeking review of his sentence is on grounds that it is contrary to law under R.C. 2953.08(A)(4). The "contrary to law" provision of R.C. 2953.08(A)(4) applies to the length of sentences only insofar as they fall outside the statutory limits for the particular degree of offense. *See State v. Holmes*, 8th Dist. Cuyahoga No. 99783, 2014-Ohio-603, ¶ 10. Smith's sentence was within the statutory limits for a fifth-degree felony, so it was not contrary to law.

**{¶14}** Another possible way to attack a sentence as being contrary to law is to argue that the court failed to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12. *State v. Hodges*, 8th Dist. Cuyahoga No. 99511, 2013-Ohio-5025, ¶ 7. We have held that the court fulfills its duty under the statutes by indicating that it has considered the relevant sentencing factors. *State v. Saunders*, 8th Dist. Cuyahoga No. 98379, 2013-Ohio-490, ¶ 4. Importantly, the court need not go through each factor on the record — it is sufficient that the court acknowledges that it has complied with its statutory duty to consider the factors without further elaboration. *See State v. Pickens*, 8th Dist. Cuyahoga No. 89658, 2008-Ohio-1407, ¶ 6.

**{¶15}** In this case, the court stated on the record at sentencing that it considered "all the statutory factors" and reiterated that point in its sentencing entry. It thus fulfilled its obligation under both R.C. 2929.11 and 2929.12 and the sentence cannot be considered contrary to law.

**{¶16}** Smith's argument thus comes down to how the court interpreted those factors against him; for example, he argues that the court should have considered that his mental condition made the crimes less serious and that he was not likely to commit a criminal offense in the future. This argument, however, takes us into the realm of the court's discretion.

**{¶17}** Sentencing judges have "discretion to determine the weight to assign a particular statutory factor." *State v. Arnett*, 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000). We cannot, however, review the sentencing judge's exercise of that discretion because R.C. 2953.08(G)(2) expressly states that "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." *State v. Akins*, 8th Dist. Cuyahoga No. 99478, 2013-Ohio-5023, ¶ 18; *State v. Thompson*, 8th Dist. Cuyahoga No. 99628, 2014-Ohio-202, ¶ 22. We thus have no jurisdiction to consider whether the court abused its discretion in how it applied the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12.

**{¶18}** Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's

conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, JUDGE

SEAN C. GALLAGHER, P.J., and
MARY EILEEN KILBANE, J., CONCUR