[Cite as *State v. Hayes*, 2017-Ohio-7716.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 104818

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JOVAN D. HAYES

DEFENDANT-APPELLANT

### JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-599021-A

**BEFORE:** E.T. Gallagher, P.J., Blackmon, J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** September 21, 2017

**ATTORNEYS FOR APPELLANT**

Allison S. Breneman
Jeffrey P. Saffold
1220 West 6th St., Suite 303
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY:    Jillian Eckart
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, P.J.:

{¶1} Defendant-appellant, Jovan Hayes ("Hayes"), appeals from his convictions and sentence following a jury trial. He raises the following assignments of error for our review:

> 1. The jury found, against the manifest weight of the evidence, that the appellant committed the acts charged in the indictment.
>
> 2. The evidence was not legally sufficient to sustain a guilty verdict.
>
> 3. The trial court abused its discretion by imposing a prison sentence contrary to R.C. 2929.14 and the purposes and principles of felony sentencing guidelines and erred by imposing consecutive sentences.

{¶2} After careful review of the record and relevant case law, we affirm Hayes's convictions and sentence.

## I. Procedural and Factual History

{¶3} Hayes was named in a five-count indictment, charging him with attempted murder in violation of R.C. 2923.02 and 2903.02(A), with firearm specifications; two counts of felonious assault in violation of R.C. 2903.11(A), with firearm specifications; having weapons while under disability in violation of R.C. 2923.13(A)(3); and intimidation of a crime victim or witness in violation of R.C. 2921.04(B)(2). In June 2016, the matter proceeded to a jury trial, where the following evidence was adduced.

{¶4} In September 2015, 13-year old, L.C., was shot in the parking lot of King Kennedy Estates, a housing development in Cleveland, Ohio. On the night of the shooting, L.C.'s mother was sick with pneumonia. L.C. testified that at approximately

8:00 p.m., he walked outside to retrieve his mother's medicine from her vehicle.   On his way to the parking lot, L.C. noticed a group of men standing near the front gate of the property.   L.C. recognized one of the men as "Big Daddy."   L.C. explained that he did not know Big Daddy personally but saw him almost every day around King Kennedy Estates.   L.C. testified that when Big Daddy noticed him, he told L.C. to "take his hood off" of his head.   L.C. testified that he did not respond to the request because he believed Big Daddy may have been addressing someone else across the street.

{¶5} As L.C. pulled his mother's car keys from his pocket, Big Daddy suddenly pointed a small, silver .22-caliber handgun at him and "started shooting."   L.C. stated that he turned around and observed "the fire come out of [Big Daddy's] gun."   He estimated that there were five gunshots.   Ultimately, L.C. was shot in his upper arm.

{¶6} Throughout his testimony, L.C. consistently stated that Big Daddy was not in the courtroom and that Hayes was not the person responsible for his shooting.   He admitted, however, that he only knew of one person in his neighborhood that "goes by the nickname Big Daddy."

{¶7} L.C. further testified that he did not cooperate with the investigation into his shooting because it would have been considered "snitching."   He stated that "where [he] is from, you snitch, you get killed."   During L.C.'s testimony, two adult men entered the courtroom and sat in the back of the room.   Upon noticing "subtle changes in [L.C.'s] testimony," the trial court asked L.C. if he recognized the men and whether their presence in the courtroom "scared him."   L.C. stated that he recognized the men from King

Kennedy Estates and that their presence did scare him "a little," but that he wished to continue his testimony. L.C. stated that he did not trust the men and believed they would go back to his neighborhood and "tell everyone what happened."

{¶8} L.C.'s mother, T.H., testified that on the night of the shooting she had returned home from the hospital and asked L.C. if "he could go outside and get [her] medicine out of the van." She stated that "a few minutes" after L.C. went outside, she heard gunshots coming from the parking lot. When T.H. and her husband went outside to make sure L.C. was safe, they were approached by a woman who told T.H. that her son had been shot. T.H. testified that she ran to L.C. who was on a porch "slumped over in a chair." As L.C. was being treated by emergency responders, she asked him who was responsible for the shooting. T.H. testified that L.C. did not answer her question at that time. However, she stated that L.C. did subsequently provide her with "some" information about the shooting and that she relayed that information to a social worker. According to T.H., L.C. refused to answer and was unwilling to cooperate with the police investigation because he feared retribution.

{¶9} Samantha Law testified that she was returning home from dinner with her family when the shooting occurred. She stated that as she was getting her children out of her vehicle, she heard gunfire. Law stated that she observed the shooter fire his gun approximately eight times while tracking the movements of "a little boy." Law testified that she immediately recognized the shooter as being Hayes, and confirmed that his street name is "Big Daddy." Law explained that she knew Hayes for well over ten years and

that no one else in the neighborhood went by the nickname Big Daddy. She further identified Hayes in court as the shooter.

{¶10} Following the shooting, Law observed Hayes place the gun in a nearby grill. She testified that once her children were safely inside her home, she went back outside to check on the injured boy. When the police arrived at the scene, Law discreetly provided an officer with a brief description of Hayes. She explained that she did not want to be seen or overheard because she did not want to be considered a "snitch."

{¶11} Later that evening, Law was confronted by Hayes, who asked her if she had made a statement to the police about the shooting. Law testified that "she played dumb" and stated that she did not talk to anyone. According to Law, Hayes then made a reference to the television show, The First 48, which she interpreted as a threat to "keep [her] damn mouth closed" because the show often "outs snitches." Later that same evening, Law observed Hayes walk past her front porch several times. Law testified that each time Hayes walked by, he lifted up his shirt to display his gun. Law stated that she perceived Hayes's actions as a clear threat. She was scared, intimidated, and believed Hayes would kill her if she spoke to the police.

{¶12} Despite Hayes's threats, however, Law testified that she flagged down Officer Christopher Collins several days later to provide a written statement. She stated that she believed something needed to be done to stop the violence in her neighborhood and that it "was the right thing to do." The following day, Officer Collins introduced

Law to Detective Robert Weis. During her interview with the detective, Law identified Hayes as the shooter in a photo array.

{¶13} During her cross-examination, Law admitted that she initially told bystanders that she did not see who shot L.C. Defense counsel further illuminated discrepancies between Law's testimony during her direct examination and the statements provided in her written police report, including the nature of the description she gave to the police, whether she spoke to L.C.'s mother on the day of the shooting, and whether she called 911. Finally, Law admitted that she believed Hayes was responsible for the shooting death of a family member in 2013. Despite this alleged bias, however, Law stated that she has no "animosity towards [Hayes]," but "wanted him to be held accountable" for his actions in this matter.

{¶14} Officer Collins, of the Cuyahoga Metropolitan Housing Authority ("CMHA") Police Department, testified that he was among first responders to the shooting. When he arrived to the scene, he discovered Law tending to L.C.'s injuries, and assisted her in applying pressure to the wound until the paramedics arrived. Officer Collins stated that he had no knowledge of whether Law ever provided a description of Hayes to an officer on the scene. Several days later, Officer Collins was approached by Law while he was heading home from his shift. Officer Collins testified that Law wanted to discuss L.C.'s shooting and appeared agitated and nervous. Following their conversation, Officer Collins drove Law to the police station to speak with Detective Weis.

{¶15} Sergeant John Smiddy, of the CMHA Police Department, testified that he responded to the scene of the shooting and was tasked with recovering evidence from the scene. Sergeant Smiddy testified that he recovered seven shell casings from what he believed were fired by a semiautomatic pistol. The firearm, however, was never recovered.

{¶16} Detective Weis, of the CMHA Police Department, testified that Officer Collins facilitated a meeting with Law several days after the shooting. During this meeting, Law provided a description of the shooter and identified Hayes from a photo array. With respect to the physical evidence recovered from the scene, Detective Weis testified that the shell casings were not sent for fingerprint or DNA testing. He explained that he decided not to send the evidence for testing because the size of the casings, and the environment in which they were found would have precluded any reliable results.

{¶17} At the conclusion of trial, Hayes was found guilty of all counts as charged in the indictment. At the sentencing hearing, the trial court agreed that the attempted murder and felonious assault offenses merged for the purposes of sentencing. The court sentenced Hayes to 11 years for attempted murder, three years for the attached firearm specification, 36 months for having a weapon while under disability, and 36 months for intimidation of crime victim or witness. The trial court ordered each prison term to run consecutively, for an aggregate 20-year sentence.

{¶18} Hayes now appeals from his convictions and sentence.

## II. Law and Analysis

## A. Sufficiency of the Evidence

{¶19} In his first assignment of error, Hayes argues his convictions are not supported by sufficient evidence.

{¶20} When assessing a challenge of sufficiency of the evidence, a reviewing court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).

{¶21} The state may use direct evidence, circumstantial evidence, or both, in order to establish the elements of a crime. *See State v. Durr*, 58 Ohio St.3d 86, 568 N.E.2d 674 (1991). Circumstantial evidence is "proof of facts or circumstances by direct evidence from which the trier of fact may reasonably infer other related or connected facts that naturally or logically follow." *State v. Seals*, 8th Dist. Cuyahoga No. 101081, 2015-Ohio-517, ¶ 32, citing *State v. Beynum*, 8th Dist. Cuyahoga No. 69206, 1996 Ohio App. LEXIS 2143 (May 23, 1996); *see also State v. Hartman*, 8th Dist. Cuyahoga No. 90284, 2008-Ohio-3683, ¶ 37.

**{¶22}** Circumstantial evidence and direct evidence inherently possess the same probative value. *Jenks* at paragraph one of the syllabus. "[A]ll that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." *Id.* at 272. "'Circumstantial evidence is not only sufficient, but may also be more certain, satisfying, and persuasive than direct evidence.'" *State v. Hawthorne*, 8th Dist. Cuyahoga No. 96496, 2011-Ohio-6078, ¶ 9, quoting *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960). And circumstantial evidence alone is sufficient to support a conviction. *State v. Coleman*, 8th Dist. Cuyahoga No. 102966, 2016-Ohio-297, ¶ 22.

**{¶23}** In this case, Hayes was convicted of attempted murder in violation of R.C. 2923.02 and 2903.02; felonious assault in violation of R.C. 2903.11(A)(1); felonious assault in violation of R.C. 2903.11(A)(2); having weapons while under disability in violation of R.C. 2923.13(A)(3); and intimidation of crime victim or witness in violation of R.C. 2921.04(B)(2).

**{¶24}** Pursuant to the statute governing murder, no person shall "purposely cause the death of another * * *." R.C. 2903.02(A). "Attempt" is set forth as follows: "No person, purposely * * * shall engage in conduct that, if successful, would constitute or result in the offense." R.C. 2923.02(A).

**{¶25}** A person acts purposely when it is his "specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to

engage in conduct of that nature." R.C. 2901.22(A). "Purpose," therefore, depends on an intended result. *State v. Orr*, 8th Dist. Cuyahoga No. 100841, 2014-Ohio-4680, ¶ 72.

**{¶26}** Circumstantial evidence can be used to demonstrate purpose or intent. *State v. Martin*, 8th Dist. Cuyahoga No. 91276, 2009-Ohio-3282, ¶ 23. Whether an offender had the specific intent to kill is a determination made upon the facts and circumstances surrounding the crime. *State v. Barrow*, 8th Dist. Cuyahoga No. 101356, 2015-Ohio-525, ¶ 16. Such factors to be considered include the nature of the instrument used, the lethality of the instrument, and the manner in which the wound was inflicted. *Id*., citing *State v. Majid*, 8th Dist. Cuyahoga No. 96855, 2012-Ohio-1192, ¶ 23. "A jury may infer a defendant's purpose to cause death when the defendant inflicts a wound with a deadly weapon in a manner that appears to be calculated to destroy life or inflict great bodily harm." *State v. Shorter*, 7th Dist. Mahoning No. 11 MA 42, 2012-Ohio-2701, ¶ 16, citing *State v. Stallings*, 89 Ohio St.3d 280, 291, 731 N.E.2d 159 (2000).

**{¶27}** R.C. 2903.11(A), felonious assault, provides:

No person shall knowingly do either of the following:

(1) Cause serious physical harm to another or to another's unborn;

(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

**{¶28}** R.C. 2923.13(A)(3), having weapons while under disability, states:

Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * the person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a

delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.[1]

**{¶29}** Finally, R.C. 2921.04(B)(2), intimidation of a crime victim or witness, provides:

No person, knowingly and by force or by unlawful threat of harm to any person or property or by unlawful threat to commit any offense or calumny against any person, shall attempt to influence, intimidate, or hinder any of the following persons:

* * *

(2)   A witness to a criminal or delinquent act by reason of the person being a witness to that act.

**{¶30}** On appeal, Hayes does not challenge any specific element of the foregoing offenses.   Instead, he broadly argues that, with the exception of Law's "unreliable testimony," the state failed to present evidence that he was the shooter or that he made subsequent intimidating comments to Law about speaking to the police.   We note that Hayes's insinuations about the credibility of the eyewitnesses does not provide a basis for a challenge to the sufficiency of the evidence.   *See Tate v. Bryson*, 8th Dist. Cuyahoga No. 98298, 2013-Ohio-934, ¶ 62.   The question is not whether the reviewing court should believe the evidence; but rather, whether the evidence, if believed, is adequate to "convince the average mind of the defendant's guilt beyond a reasonable doubt."   *Jenks*, 61 Ohio St.3d 259, at 273, 574 N.E.2d 492.

---

[1]   At trial, the parties stipulated to the authenticity and admissibility of Hayes's prior conviction for drug trafficking on September 17, 2012, in Cuyahoga C.P. No. CR-09-524490.   (Tr. 1270, 1311.)

**{¶31}** In this case, no weapon or forensic evidence tied Hayes to the shooting. However, Law provided eyewitness testimony that identified Hayes as the shooter. Law testified that she was at the King Kennedy Estates at the time of the shooting and observed Hayes fire his gun at L.C. approximately eight times. The evidence further established that Law was well-acquainted with Hayes from the neighborhood and that Hayes went by the street name, Big Daddy.

**{¶32}** In *Bryson*, this court held that eyewitness identification testimony alone is sufficient to support a conviction — even where discrepancies exist — so long as a reasonable juror could find the eyewitness testimony to be credible. *Bryson*, 8th Dist. Cuyahoga No. 98298, 2013-Ohio-934, at ¶ 64, citing *State v. Jordan*, 10th Dist. Franklin No. 04AP-827, 2005-Ohio-3790, ¶ 14. Thus, we find Law's testimony, if believed, was adequate to convince the average mind that Hayes was the shooter beyond a reasonable doubt. Having determined that there was sufficient evidence that Hayes was responsible for the shooting, we further find the state presented sufficient evidence that Hayes knowingly used a weapon while under disability, and caused L.C. serious physical harm by means of a deadly weapon.

**{¶33}** With respect to Hayes's intent or purpose, we find the evidence presented at trial demonstrates that the shooting was not accidental, but was the purposeful attempt to cause L.C.'s death. Seven shell casings were found at the site of the shooting, and L.C. testified that the shots were fired successively. In addition to Law's testimony that Hayes tracked L.C. with his firearm, L.C. also stated that he looked up and observed the shooter

pointing the gun at him. Under these circumstances, we find the specific intent to kill can be reasonably inferred from Hayes's use of a firearm — "an inherently dangerous instrumentality, the use of which is likely to produce death." *See State v. Searles*, 8th Dist. Cuyahoga No. 96549, 2011-Ohio-6275, ¶ 11.

**{¶34}** Hayes next argues that he cannot be convicted of intimidating a witness in a criminal case because there is insufficient evidence that he made an unlawful threat of harm. We note that R.C. 2921.04(B) requires only an attempt to influence, intimidate, or hinder. "[T]he defendant need only try to create fear about or try to influence or hinder the filing or prosecution of criminal charges." *State v. Thompson*, 7th Dist. Columbiana No. 13 CO 20, 2014-Ohio-1225, ¶ 16, citing R.C. 2921.04(B). However, the Ohio Supreme Court has held that an "unlawful threat" must be "more than just a threat, i.e., more than just a communication to a person that particular negative consequences will follow should the person not act as the communicator demands." *State v. Cress*, 112 Ohio St.3d 72, 2006-Ohio-6501, 858 N.E.2d 341, ¶ 41. Therefore, "the statutory language in R.C. 2921.04(B), proscribing intimidation by an 'unlawful threat of harm,' is satisfied only when the very making of the threat is itself unlawful because it violates established criminal or civil law." *Id*. at ¶ 42.

**{¶35}** In this case, Law testified that Hayes approached her on two separate occasions and made statements or actions that she interpreted as direct threats. During the first encounter, Hayes asked Law if she told anyone about what she had witnessed and made a reference to a television show that was known to "out snitches." Later that

evening, Hayes walked past Law's home several times and lifted his shirt to show her his gun. Although these statements and actions constituted implied, indefinite threats, the Ohio Supreme Court has noted that "[t]he most intimidating threat of all may be an indefinite one." *Cress* at ¶ 37. In this case, the trier of fact could have reasonably concluded that Hayes's conduct constituted viable threats of physical harm against Law. *See State v. Jackson*, 12th Dist. Fayette No. CA2011-01-001, 2011-Ohio-5593. Moreover, we find that a rational trier of fact could easily conclude that Hayes's act of displaying a firearm while under weapons disability was unlawful and served no purpose other than to intimidate Law in an effort to keep her from speaking to the authorities. *See State v. Hills*, 8th Dist. Cuyahoga No. 98848, 2013-Ohio-2902.

{¶36} Viewing the foregoing evidence in a light most favorable to the state, we find that a rational trier of fact could have determined beyond a reasonable doubt that Hayes was guilty of attempted murder, felonious assault, having weapons while under disability, and intimidation of a witness. Accordingly, Hayes's first assignment of error is overruled.

## B. Manifest Weight of the Evidence

{¶37} In his second assignment of error, Hayes argues his convictions are against the manifest weight of the evidence.

{¶38} In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. A reviewing court "weighs the evidence and all

reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 388, 678 N.E.2d 541. A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶39} Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact is best able "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. The trier of fact may take note of any inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

{¶40} In support of his manifest weight challenge, Hayes argues that the state's evidence relied exclusively on the "inconsistent and biased" testimony of Law. He contends that, besides Law's testimony, "there was no other evidence that [he] was the

shooter who shot [L.C.]." Hayes notes that "[i]n fact, [L.C.] testified that it was not Hayes who shot him."

{¶41} After reviewing the record, we cannot say this is the exceptional case in which the evidence weighs heavily against the convictions and that the trial court clearly lost its way and created a manifest miscarriage of justice. In this case, Law was thoroughly cross-examined by defense counsel regarding her alleged bias and the inconsistencies between her testimony at trial and her written police statement. Law explained that she bore no animosity towards Hayes and that any perceived inconsistencies were the result of the passage of time. Under these circumstances, we find the jury had sufficient information to judge the credibility of Law and "was free to believe all, part, or none" of her testimony. *State v. Colvin*, 10th Dist. Franklin No. 04AP-421, 2005-Ohio-1448, ¶ 34; *State v. Smith*, 8th Dist. Cuyahoga No. 93593, 2010-Ohio-4006, ¶ 16.

{¶42} Furthermore, given L.C.'s extensive statements concerning his fear of retribution for "snitching," the jury was free to give substantial weight to Law's eyewitness identification testimony despite L.C.'s testimony that Hayes was not his shooter. Deferring to the jury's assessment of the witnesses' credibility, as we must, we find Hayes's convictions are not against the manifest weight of the evidence.

{¶43} Hayes's second assignment of error is overruled.

### C. Sentencing Challenge

{¶44} In his third assignment of error, Hayes argues the trial court did not properly consider the purposes of felony sentencing as required by R.C. 2929.11 and the seriousness and recidivism factors contained in R.C. 2929.12. He further contends that the imposition of consecutive sentences was contrary to law.

{¶45} Appellate review of felony sentences is governed by R.C. 2953.08, which provides that when reviewing felony sentences, this court may increase, reduce, modify a sentence, or vacate and remand for resentencing if we clearly and convincingly find that the record does not support the sentencing court's statutory findings, if applicable, or the sentence is contrary to law. R.C. 2953.08(G)(2). A sentence is contrary to law if (1) the sentence falls outside the statutory range for the particular degree of offense, or (2) the trial court failed to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors in R.C. 2929.12. *State v. Hinton*, 8th Dist. Cuyahoga No. 102710, 2015-Ohio-4907, ¶ 10, citing *State v. Smith*, 8th Dist. Cuyahoga No. 100206, 2014-Ohio-1520, ¶ 13. When a sentence is imposed after consideration of the factors in R.C. 2929.11 and 2929.12, appellate courts "may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 23.

{¶46} Clear and convincing evidence "is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the

mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Marcum* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶47} R.C. 2929.11(A), governing the purposes and principles of felony sentencing, provides that a sentence imposed for a felony shall be reasonably calculated to achieve two overriding purposes of felony sentencing (1) to protect the public from future crime by the offender and others, and (2) to punish the offender using the minimum sanctions that the court determines will accomplish those purposes. Furthermore, the sentence imposed shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes by similar offenders." R.C. 2929.11(B).

{¶48} R.C. 2929.12 delineates the seriousness and recidivism factors for the sentencing court to consider in determining the most effective way to comply with the purposes and principles of sentencing set forth in R.C. 2929.11. The statute provides a nonexhaustive list of factors a trial court must consider when determining the seriousness of the offense and the likelihood that the offender will commit future offenses.

{¶49} This court has held that a trial court "fulfills its duty under the statutes by indicating that it has considered the relevant sentencing factors." *Smith*, 8th Dist. Cuyahoga No. 100206, 2014-Ohio-1520, at ¶ 14, citing *State v. Saunders*, 8th Dist. Cuyahoga No. 98379, 2013-Ohio-490, ¶ 4. The trial court "need not go through each factor on the record — it is sufficient that the court acknowledges that it has complied with

its statutory duty to consider the factors without further elaboration." *Id.*, citing *State v. Pickens*, 8th Dist. Cuyahoga No. 89658, 2008-Ohio-1407, ¶ 6.

**{¶50}** In this case, Hayes does not dispute that the 11-year sentence imposed on his first-degree felony offense, and the 36-month sentences imposed on his third-degree felony offenses were within the statutory ranges under R.C. 2929.14(A)(1) and (3). He further concedes that the three-year firearm specification attached to the attempted murder offense was required to be served "consecutively to and prior to any prison term imposed for the underlying felony * * *." R.C. 2929.14(C)(1)(a).

**{¶51}** Nevertheless, Hayes argues "the trial court abused its discretion by failing to properly weigh the seriousness and recidivism factors set forth in R.C. 2929.12, as well as failing to properly consider the purposes and principles of the felony sentencing guideline before imposing a 20-year sentence." However, "[t]he weight to be given to any one sentencing factor is purely discretionary and rests with the trial court." *State v. Ongert*, 8th Dist. Cuyahoga No. 103208, 2016-Ohio-1543, ¶ 10, citing *State v. Torres*, 8th Dist. Cuyahoga No. 101769, 2015-Ohio-2038, ¶ 11. A lawful sentence "cannot be deemed contrary to law because a defendant disagrees with the trial court's discretion to individually weigh the sentencing factors. As long as the trial court considered all sentencing factors, the sentence is not contrary to law and the appellate inquiry ends." *Ongert* at ¶ 12. *See also State v. Ledbetter*, 8th Dist. Cuyahoga No. 104077, 2017-Ohio-89, ¶ 11.

**{¶52}** Here, the trial court expressly stated on the record that it carefully considered R.C. 2929.11 and 2929.12, and reiterated in the sentencing journal entry that it "considered all required factors of law," and found "that prison is consistent with the purpose of R.C. 2929.11." Although not required to do so, the trial court made specific findings regarding the relevant seriousness and recidivism factors. Specifically, the trial court found that the physical and psychological injuries suffered by L.C. were significant, and "absolutely unacceptable" based on the lack of provocation. The court further noted the risk Hayes's conduct posed to other members of the community, who could have been hit with one of the seven gunshots. As for the recidivism factors, the court discussed Hayes's extensive criminal history and the apparent fact that "incarceration has failed to rehabilitate [him]."

**{¶53}** Under these circumstances, we find the sentences imposed are not contrary to law. The prison terms fall within the applicable statutory ranges, and the record affirmatively supports that the trial court considered the relevant statutory factors under R.C. 2929.11 and 2929.12. Moreover, Hayes has failed to show by clear and convincing evidence that the record does not support his sentence.

**{¶54}** With respect to the consecutive nature of the prison terms, R.C. 2929.14(C)(4) provides that in order to impose consecutive sentences, the trial court must find that consecutive sentences are (1) necessary to protect the public from future crime or to punish the offender, (2) that such sentences would not be disproportionate to the

seriousness of the conduct and to the danger the offender poses to the public, and (3) that

one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶55}** Compliance with R.C. 2929.14(C)(4) requires the trial court to make the statutory findings at the sentencing hearing, which means that "'the [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.'" *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999). Further, the reviewing court must be able to discern that the record contains evidence to support the findings. *State v. Davis*, 8th Dist. Cuyahoga No. 102639, 2015-Ohio-4501, ¶ 21, citing *Bonnell* at ¶ 29. A trial court is not, however, required to state its reasons to support its findings, nor is it required to give a rote recitation of the statutory language, "provided that the necessary findings can be found in the record and are incorporated in the sentencing entry." *Bonnell* at ¶ 37.

**{¶56}** At the sentencing hearing, the trial court stated, in relevant part:

The Court finds that you do have an extensive criminal history, that you have, in fact, been incarcerated by New York authorities, and that incarceration failed to rehabilitate you.

The victims in this matter did suffer both serious physical harm and serious emotional harm, and I don't care if a bullet hits someone in the arm, I don't care is a bullet hits somebody in a toe, or a bullet hits somebody in the head, it's still a bullet.    It's still a gunshot wound.

\* \* \*

And in this case, in reviewing the evidence, reviewing the factors, and taking a look at everything here, I believe that given the nature of this offense, just the wanton violence that occurred here, firing seven shots in a parking lot at an individual, who was doing nothing except walking to a garbage can and walking to his mother's car for no reason other than he had an hood on, to fire seven shots and not only risk killing him, but risk killing other members of the community, that is utterly unacceptable to this Court, and I believe in this case that consecutive sentences are necessary to protect and punish and would not be disproportionate.

I do find that the crimes were committed while the Defendant was on Post Release Control, or whatever supervision New York State has, parole, or Post Release Control, whatever they call it.

I find that the harm was so great or unusual that a single term will not adequately reflect the seriousness of the conduct, and also the Defendant's criminal history shows the consecutive sentences are needed to protect the public.

{¶57} The trial court's remarks during sentencing clearly demonstrate that the court found that consecutive sentences are necessary to protect the public from future crime or to punish the offender and are not disproportionate to the seriousness of the offender's conduct.   The court also found, and the record demonstrates, that Hayes has an extensive criminal history and was under supervision in the state of New York.   Finally, the court found that the harm caused by the offenses was so great or unusual that a single term will

not adequately reflect the seriousness of the conduct. The trial court's findings were incorporated into the sentencing journal entry.

**{¶58}** For these reasons, we conclude that the trial court made all of the required R.C. 2929.14(C)(4) findings before imposing consecutive sentences in this matter. Moreover, we find no merit to Hayes's assertion that the record clearly and convincingly does not support the court's "seriousness" findings. As noted by the trial court, Hayes shot an unarmed teenage boy without provocation and without concern for those in the surrounding area.

**{¶59}** Hayes's third assignment of error is overruled.

**{¶60}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

EILEEN T. GALLAGHER, PRESIDING JUDGE

PATRICIA ANN BLACKMON, J., and
FRANK D. CELEBREZZE, JR., J., CONCUR