[Cite as *State v. Schmidt*, 2019-Ohio-3990.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-L-068** |
| TIMMOTHY SCOTT SCHMIDT, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2017 CR 001245.

Judgment: Affirmed.


*Charles E. Coulson*, Lake County Prosecutor, and *Karen A. Sheppert*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Vanessa R. Clapp*, Lake County Public Defender, and *Melissa Ann Blake*, Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).


THOMAS R. WRIGHT, P.J.

{¶1} Appellant, Timmothy Scott Schmidt, appeals imposition of a 44.5-year sentence following conviction on two counts of felonious assault with firearm specifications and one count of resisting arrest with a firearm specification. In addition to challenging the length of his prison term, he argues that the resisting arrest count merges. We affirm.

{¶2} On September 28, 2017, Patrolmen Cory Planisek and Craig Anderson of the Willoughby Hills Police Department were dispatched to a local car dealership due to a report of a disgruntled customer. After arriving at the dealership, the patrolmen learned that appellant was the disgruntled customer. After relaying his name to dispatch, they were preliminarily informed that there were two outstanding warrants for appellant's arrest and that his driver's license was suspended.

{¶3} The patrolmen did not approach appellant until he paid his bill and stepped into the garage area of the dealership. At that point, the patrolmen stopped him and engaged him in conversation for a few minutes. As the discussion was ending, the patrolmen received confirmation over their portable radios of the arrest warrants. Realizing he was about to be taken into custody, appellant turned and ran toward an exit from the garage.

{¶4} Appellant was carrying a concealed 9mm Smith & Wesson handgun in the back waistband of his pants. The handgun had a full magazine of eight rounds, with one in the chamber, ready to fire.

{¶5} The patrolmen quickly began chase, with Patrolman Planisek leading the way. As appellant neared an open bay door, he reached behind his back and grabbed the handgun with his right hand. At approximately the same time appellant was securing his control over the handgun, Patrolman Planisek caught him and tackled him to the ground. Appellant landed on his stomach, with his right arm extended in front of him. Patrolman Planisek landed on appellant's back and attempted to subdue him.

{¶6} While his arm was extended forward on the ground, appellant fired one shot that went to his left, away from the two officers. As he and Patrolman Planisek continued

2

to struggle, he rolled onto his back and saw Patrolman Anderson, who had run up from behind. Appellant then fired a number of shots, one of which hit Patrolman Anderson. Stunned, Patrolman Anderson momentarily limped away from the struggle and tried to contact dispatch for assistance. He then turned around, unholstered his firearm, and began limping back toward the struggle when appellant shot him a second time. Undeterred, Patrolman Anderson maneuvered himself to a position where he could fire without endangering Patrolman Planisek and shot appellant four times. At that point, appellant threw up his hands in surrender.

{¶7} During the short time span in which Patrolman Anderson attempted to call dispatch, Patrolman Planisek continued his efforts to subdue appellant. After shooting Patrolman Anderson the first time, appellant continued firing and shot Patrolman Planisek twice. Appellant fired all nine rounds during the confrontation.

{¶8} All three men suffered serious physical injuries, but none of the wounds were fatal. Both patrolmen had wounds to their torso and legs requiring hospitalization. In addition to his bullet wounds, Patrolman Planisek's left eardrum was seriously damaged.

{¶9} Appellant was indicted on two counts of attempted murder, four counts of felonious assault, and one count of resisting arrest. In return for the dismissal of the other four counts, appellant plead guilty to two counts of felonious assault, first-degree felonies under R.C. 2902.11, and one count of resisting arrest, a fourth-degree felony under R.C. 2921.33. Both remaining felonious assault counts had one firearm specification under R.C. 2941.1412, and the resisting arrest count had two firearm specifications under R.C. 2941.1412 and 2941.141.

3

{¶10} After accepting the guilty plea and finding appellant guilty on all three counts and the accompanying firearm specifications, the trial court held a separate sentencing hearing. In speaking on his own behalf, appellant said that he had been addicted to illegal drugs for many years, and that he was "high" on heroin when the incident occurred. He also said that he tried to escape the patrolmen because he felt he would have serious health problems if he was required to go "cold turkey" while in jail. In response, the state contended that appellant's voluntary abuse of illegal drugs should not be considered mitigating. The state presented a videotape of the incident, as taped by multiple cameras in the car dealership's security system and a camera in one of the police cruisers.

{¶11} During sentencing, the trial court concluded in regard to the two firearm specifications under the resisting arrest count, the one-year specification under R.C. 2941.141 merged into the seven-year specification under R.C. 2941.1412. As to the R.C. 2941.1412 specification contained in each of the three counts, the court found that the three specifications do not merge and therefore, consecutive seven-year terms could be imposed on each specification. As to the three counts, the trial court found that "none of the counts merge because they were each conducted with separate conduct, animus and import."

{¶12} The trial court imposed an eleven-year prison term on each of the felonious assault counts, an eighteen-month term on the resisting arrest count, seven years each on the three firearm specifications, all to be served consecutively for an aggregate prison term of 44.5 years.

{¶13} In challenging his sentence, appellant raises two assignments for review:

{¶14} "[1.] The trial court erred to the prejudice of the defendant-appellant when it

4

failed to merge his conviction for resisting arrest and its accompanying seven-year firearm specification with his felonious assault convictions, in violation of his rights against double jeopardy under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

{¶15} "[2.] The trial court erred by sentencing the defendant-appellant to consecutive, maximum prison sentences totaling 44.5 years."

{¶16} Under his first assignment, appellant argues that his aggregate sentence must be reduced by 8.5 years because the trial court erred in not merging the resisting arrest count and its accompanying firearm specification into the felonious assault counts. He asserts that a separate sentence cannot be imposed for resisting arrest because all three crimes were committed with the same conduct, were committed with the same animus, and had similar import. He further asserts that even though he did not raise the merger issue at the trial level, the trial court's alleged error must be considered plain error.

{¶17} As an initial point, it has been generally recognized that an appellate court is obligated to conduct a de novo review of a trial court's merger determination, and that any imposition of multiple sentences for allied offenses of similar import is viewed as plain error. *State v. Johnson*, 7th Dist. Mahoning No. 12 MA 137, 2014-Ohio-4253, ¶ 109. However, for the following reasons, we hold the resisting arrest count does not merge.

{¶18} "The constitutional prohibition against double jeopardy generally protects a criminal defendant from successive prosecutions and multiple punishments for the same crime." *State v. Smith*, 11th Dist. Portage No. 2017-P-0053, 2018-Ohio-5183, ¶ 20. In Ohio, the merger of allied offense of similar import is governed by R.C. 2941.25:

{¶19} "(A) Where the same conduct by defendant can be construed to constitute

5

two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

**{¶20}** "(B) When the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

**{¶21}** In construing the foregoing, the Supreme Court of Ohio held:

**{¶22}** "1. In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors–the conduct, the animus, and the import.

**{¶23}** "2. Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

**{¶24}** "3. Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraphs one, two, and three of the syllabus.

**{¶25}** At the conclusion of the *Ruff* opinion, the foregoing was restated as follows:

**{¶26}** "As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three

6

questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation?  An affirmative answer to *any* of the above will permit separate convictions.  The conduct, the animus, and the import must all be considered." *Id*. at ¶ 31.  (Emphasis added.)

{¶27}  In applying *Ruff*, this court has concluded that two offenses will be deemed to have occurred separately when the elements of one offense are completed before all the elements of the second offense are satisfied.  *State v. Armstead-Williams*, 11th Dist. Portage No. 2016-P-0007, 2017-Ohio-5643.  In *Armstead-Williams*, the question was whether aggravated burglary merged with aggravated robbery:

{¶28}  "Under R.C. 2911.11(A)(1), the aggravated burglary was completed when appellant trespassed into Tyler's apartment by force with purpose to commit theft (by demanding money) and *threatened* to harm him.  Further, under R.C. 2911.01(A), the aggravated robbery was completed when, in committing the theft, appellant *inflicted serious physical harm on Tyler* by beating him in the head with his gun.  Since the aggravated burglary was complete when appellant threatened to harm Tyler, appellant's subsequent act of pistol-whipping him was unnecessary to complete aggravated burglary.  Thus, aggravated robbery was committed separately.  * * * If a separate penalty could not be imposed for aggravated robbery, that would mean that appellant would be free to inflict physical harm on Tyler without additional penalty."  (Emphasis sic.) *Id*. at ¶ 35.

{¶29}  Appellant pleaded guilty to resisting arrest under R.C. 2921.33(C)(1), which forbids a person, recklessly or by force, from resisting a lawful arrest when, "during the course of or as a result of the resistance * * *, [he] recklessly causes physical harm to a

7

law enforcement officer by means of a deadly weapon * * *." Given that appellant was already resisting Patrolman Planisek's efforts to subdue him when he shot Patrolman Anderson the first time, this conduct completes resisting arrest.

{¶30} Appellant's convictions for felonious assault were pursuant to R.C. 2903.11(A)(1), which prohibits a person from knowingly causing serious physical harm to another. Appellant's separate conduct of shooting Patrolman Anderson again and Patrolman Planisek twice, constitute the felonious assault convictions. As there was separate conduct supporting each conviction, the resisting arrest count does not merge. *Ruff.* Appellant's first assignment lacks merit.

{¶31} Under his second assignment, appellant contests imposition of maximum prison terms on all counts, for an aggregate sentence of 44.5 years. He argues that the trial court's consideration of the sentencing factors under R.C. 2929.12(C) was erroneous because it failed to give any weight to his five-year illegal drug addiction and its role in his commission of the underlying crimes.

{¶32} The standard of appellate review is set forth in R.C. 2953.08(G)(2):

{¶33} "The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

{¶34} "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard of review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincing finds either of the following:

8

**{¶35}** "(a) That the record does not support the sentencing court's findings under division (B) or (C) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

**{¶36}** "(b) That the sentence is otherwise contrary to law."

**{¶37}** "'A sentence is contrary to law if (1) the sentence falls outside the statutory range for the particular degree of offense, or (2) the trial court failed to consider the purposes or principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors in R.C. 2929.12. *State v. Hinton*, 8th Dist. Cuyahoga No. 102710, 2015-Ohio-4907, ¶ 10, citing *State v. Smith*, 8th Dist. Cuyahoga No. 100206, 2014-Ohio-1520, ¶ 13. When a sentence is imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12, appellate courts "may vacate or modify any sentence * * * only if the appellate court finds by clear and convincing evidence that the record does not support the sentence." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 23.'" *State v. Drought*, 11th Dist. Ashtabula No. 2016-A-0060, 2017-Ohio-1415, ¶ 12, quoting *State v. Price*, 8th Dist. Cuyahoga No. 104341, 2017-Ohio-533, ¶ 14.

**{¶38}** Appellant does not dispute that his prison terms fall within the applicable statutory ranges.

**{¶39}** "A trial court imposing a felony sentence is required to consider the seriousness and recidivism factors found in R.C. 2929.12 to ensure the sentence complies with the overriding principles of felony sentencing, as stated in R.C. 2929.11. *See* R.C. 2929.12(A). The trial court, however, 'is not required to "use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors (of R.C. 2929.12).'" *State v. Webb*,

9

11th Dist. Lake No. 200-L-078, 2004-Ohio-4198, ¶ 10, quoting *State v. Arnett*, 88 Ohio St.3d 208, 215 (2000). Moreover, the 'trial court is not required to give any particular weight or emphasis to a given set of circumstances' when considering the statutory factors. *State v. Delmanzo*, 11th Dist. Lake No. 2007-L-218, 2008-Ohio-5856, ¶ 23." *State v. Miller*, 11th Dist. Lake No. 2017-L-074, 2017-Ohio-8809, ¶ 8.

{¶40} In asserting that the trial court did not consider all of the relevant statutory factors pertaining to the seriousness of his crimes, appellant notes that the court stated that there were no relevant considerations that the offenses were less serious than conduct normally forming those offenses. According to appellant, this establishes that the trial court did not consider his drug addiction. R.C. 2929.12(C)(4). Appellant asserts that his long-term addiction constitutes a substantial mitigating factor warranting imposition of shorter prison terms.

{¶41} Notwithstanding, the trial court considered appellant's addiction during sentencing. The trial court noted that appellant failed to take full advantage of an opportunity for rehabilitation when it was offered following his conviction for marijuana possession in Florida. Second, the court noted that appellant was also using illegal drugs as a means of making a living. Thus, the trial court considered appellant's addiction, but did not afford it any weight. There was considerable evidence showing that the patrolmen suffered serious physical, psychological, and economic harm.

{¶42} Appellant has failed to clearly and convincingly establish that the record does not support the trial court's findings and sentence.

**{¶43}** The judgment of the Lake County Court of Common Pleas is affirmed.


MATT LYNCH, J.,

MARY JANE TRAPP, J.,

concur.